Brooklyn Eastern District Terminal, Plaintiff, *v.* The Central Railroad Company of New Jersey, Defendant.

First Department, January 19, 1917.

Railroad — contract with terminal company construed — demurrage — when terminal company entitled to reasonable value for storing freight for railroad company.

Where a contract between the defendant railroad company and the plaintiff, which operated a terminal freight station, required the latter to receive and transfer the defendant's freight and deliver the same as consigned, and provided that the responsibility of the plaintiff should continue until it returned cars to the defendant, loaded or empty, and until the actual delivery of the freight contained therein, in consideration of which the defendant was to pay in full compensation certain sums set forth in the schedule, but the contract made no provision whatever for any kind of storage of freight in the plaintiff's warehouse, and in no way referred to compensation to the plaintiff for storage of cars or freight, the plaintiff having stored a car of merchandise received from the

defendant for a period of one year owing to the fact that the consignee refused to receive the goods, which storage was continued at the request of the defendant, in order to allow the year to expire before the goods could be sold pursuant to the statute, the defendant is liable to the plaintiff for the reasonable value of such storage, as no duty in respect to storage was imposed upon plaintiff by the contract.

Especially is this so where the defendant railroad had full control of the freight and power to withdraw it from the custody of the plaintiff at any time.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*H. B. Closson,* for the plaintiff.

*Neil P. Cullom* [*Arthur W. Rinke* with him on the brief], for the defendant.

DOWLING, J.:

The plaintiff (hereinafter referred to as the Terminal) is a navigation corporation organized under the Transportation Corporations Law of the State of New York, engaged in the business of operating a union freight terminal station, situated in the borough of Brooklyn, city of New York, and in transporting freight between said terminal and the termini at the port of New York of the various trunk line railroads reaching that port. The defendant (hereinafter referred to as the Railroad) is a railroad corporation organized under the laws of the State of New Jersey, having a place for the transaction of business in the State of New York and engaged as a common carrier by rail in interstate commerce between the port of New York and various points in the middle and western States. Between plaintiff and defendant there existed a contract in writing, originally made with the latter by Lowell M. Palmer, whose rights and obligations thereunder were duly assigned to, and assumed by, the plaintiff. This contract recites that Palmer, as party of the first part, is the lessee of certain premises situate in the city of Brooklyn fronting on the East river between North Fifth and North Tenth streets upon which are warehouses, hay sheds, grain elevator, main tracks and sidings,

floating bridges and approaches, with other appurtenances suitable for the reception and delivery of package freights, sugars, cooperage material, etc., and for carriage between said premises and the freight stations of the party of the second part, located at Jersey City, and that the main railroad system of the Railroad runs to its freight station at Jersey City and has thereat track connection with float bridges, and it desires to avail itself of the facilities which Palmer owns for the purpose of transferring freight in both directions between said premises in Brooklyn and the freight station aforesaid. It is further recited that Palmer also engages in the business of receiving and forwarding cooperage materials and other property of his own and of other forwarders and receivers, to and from said premises. Palmer then agreed to put and maintain in good order his premises for the reception and delivery of freight under the contract and to provide and maintain floats, tugs, docks, float bridges and approaches adequate at all times to receive, transfer and deliver freight loaded or to be loaded in cars under the contract, and sufficient to accommodate the amount of business thereunder contemplated. Palmer then agreed to receive at the Jersey City float bridges in cars placed upon floats, all freight intended for delivery at his premises aforesaid, and to safely carry and deliver the same as consigned. It is then provided: "The responsibility of the party of the first part for eastwardly-bound cars and the property therein, shall begin when the same are placed upon his floats at said Jersey City float bridges of the party of the second part, and shall continue as respects cars, until they have been returned by him loaded or empty, and as respects the property contained in eastwardly-bound cars, his responsibility shall continue until its actual delivery or acceptance by consignee at Brooklyn." It is then provided that the responsibility of Palmer for the safety of all cars and freight shall be absolute and unqualified. The Railroad then agreed to pay Palmer "in full for all his services under this contract, as well as in full compensation for all responsibility to be undertaken by him in respect to cars and freight, as follows;" and there is set forth a schedule of rates, which so far as applicable to the consignment in question, is three cents per 100 **pounds.**

It is then further provided that an account of the charges incurred under the agreement shall be made up monthly, and become payable on or before the twenty-fifth day of the next month, and that Palmer became responsible for, and agreed to pay to the Railroad all freight moneys and charges as set forth in the freight bills rendered by the Railroad for the transportation of east-bound freight delivered it. Palmer also agreed to insure against loss or damage by fire and marine risks all freight, cars or property received by him upon his floats or on the premises, under the contract, so long as the same should remain in his possession and until delivered to consignee or to the party of the second part for transportation. The contract contains no provision of any kind for the storage of any freight in Palmer's warehouses, nor is such storage in any way referred to as one of the services for which Palmer was to be compensated by the payment of three cents per 100 pounds. The plaintiff as the assignee of Palmer's interest under this contract has continued to carry out the same with the defendant. Pursuant to law the Railroad filed with the Interstate Commerce Commission a tariff containing the following provisions:

"Shipments of Hay and Straw, in carloads, consigned for delivery at the Brooklyn Eastern District Terminal, Brooklyn, N. Y., will be unloaded in the hay warehouse of such terminal and be subject to the following charges: A charge of 25c per ton of 2,000 pounds will be assessed on all shipments on Hay and Straw handled through the hay warehouses of the Brooklyn Eastern District Terminal, which charge will cover handling from cars to warehouses, from warehouses to consignees' wagons or drays, and will include labor necessary for testing.

"For storage on shipments remaining in warehouse beyond 48 hours (Sundays, full holidays, and the day of arrival not included) $1.00 per car per day, or fraction thereof."

The custom followed by the Terminal and the Railroad in carrying out this contract is that the plaintiff upon all east-bound freight received by it from the Railroad collects from the consignee, upon delivery of the freight to him, the full amount of the charges thereon which the Railroad is entitled to charge under its published tariff, and retaining therefrom its charges, if any, for handling, storage and warehousing, remits the

remainder to the defendant, such remainder being sufficient to pay all the Railroad's freight and other charges and the Railroad thereafter paying the plaintiff the agreed compensation of three or four and one-fifth cents per 100 pounds provided for in the contract according to the character of the freight.

The particular transaction which is the basis of this controversy was the delivery on July 25, 1913, by the Railroad to the Terminal at Jersey City, for transportation to the Brooklyn Terminal, of a carload of hay consigned by the Interstate Hay Company to its own order at Elizabeth, N. J., and reconsigned to F. Williams, Brooklyn, N. Y. At that time the charges which had accrued to the Railroad for freight, advances and demurrage amounted to $119.40. The plaintiff unloaded the carload of hay into its hay warehouse at its terminal, giving due notice to the consignee of its arrival. Williams surrendered to the Railroad the original bill of lading, properly indorsed, which said bill of lading, and the reconsignment bill of lading, each being in the uniform form, contained the following provision:

"Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays), after notice of its arrival has been sent or given, may be kept in car, depot or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

Williams, however, refused to accept the delivery of the hay or to pay any charges thereon, of which, on July 28, 1913, notice was given to the defendant. Thereafter eighteen letters passed between the plaintiff and defendant in reference to this carload of hay. The first bears date of August 13, 1913, wherein the plaintiff advises the defendant "that the shipment is still on hand unclaimed. * * * Will you kindly furnish immediate disposal orders covering." The defendant, on

August 18, 1913, wrote to plaintiff expressing a wish that they would advise it in case the shipment was not disposed of in the next few days. On September 12, 1913, the defendant wrote plaintiff that it had made up a new reconsigned bill of lading and mailed it to the shippers, whom it presumed "will furnish you with disposition for the car in question within a short time. I would be glad, however, if you would advise me if you do not receive disposition within a reasonable time." On September 23, 1913, the plaintiff wrote defendant: "We are still without disposition from this car of hay billed straight to F. Williams. Will you kindly furnish immediate disposal orders, inasmuch as storage charges are accruing." On November 12, 1913, plaintiff again wrote defendant: "The storage charges to date (November 11th) on car 12623 consigned to Mr. F. Williams amount to $87. As these charges are increasing, I would be pleased to receive from you disposition, in order to clear this matter from our books." On November 26, 1913, the defendant wrote plaintiff as follows: "I now have permission to sell this car of hay for account of F. A. Kile, Dunbridge, O. Please advise if you will be able to dispose of it for the amount of charges that have accrued." Plaintiff reported to the defendant that the best price it could obtain for the hay was forty cents per 100 pounds, whereupon the defendant wrote to plaintiff as follows: "I have taken this matter up further with the shippers in Ohio. Inasmuch as the price offered will not begin to cover the storage and demurrage charges, I will wait to hear from them further before authorizing you to dispose of the hay at that price." On January 19, 1914, the plaintiff notified the defendant that as the shipment was still on hand and storage charges were accruing they were requested to furnish immediate disposal orders covering, whereupon defendant on January 30, 1914, said it was trying to "get disposition" of the car and would advise Mr. Smith (of the plaintiff company) as soon as anything definite was learned. On February 10, 1914, the plaintiff wrote defendant as follows: "I would ask you as the storage charges on this car are steadily increasing to kindly advise me if you are now able to furnish disposition." On March 2, 1914, the defendant wrote plaintiff as follows: "We

had hoped to get disposition of this hay but that now seems impossible. It therefore presumably will be necessary to hold same until the hay has been on hand for one year, at which time we will arrange to sell same. I suggest that you call our attention to this matter when the year has elapsed, so that we can promptly arrange with you for the sale of same. I will be glad to have advice from you as to the exact date that this car arrived at Brooklyn, so that I may know exactly what date the statutory period of one year expires." Then on March 16, 1914, plaintiff notified the defendant that it would be necessary for the plaintiff to hold the defendant responsible "for the storage charges which will accrue on this car, which will, of course, be the first lien at the proceeds of the sale of the shipment if at the time of sale it does not bring sufficient to cover the charges." To this the defendant replied on March 17, 1914, that it would endeavor to see that plaintiff got back their storage charges on the sale, and that "of course, all charges will be disposed of in accordance with contract between our companies." Then on May 26, 1914, the plaintiff asked for a check for $119.40 in settlement of the storage charges, to which the defendant replied as follows: "I have to advise that we are not able to take care of these storage charges at this time. However, as soon as the year is up, which will be sometime in the latter part of July, we will proceed to sell this hay, if you will advise me the exact date on which this consignment reached your station. What I desire to have is not the date the hay was put in storage, but the date on which the car arrived and the notice of arrival was sent out. When the year has expired we will arrange to sell the hay for charges, after duly advertising, etc., and then adjust the matter of storage charges." Plaintiff gave the desired information, and on June 12, 1914, the defendant wrote that it would arrange to dispose of the hay in accordance with the statute as soon after July 25, 1914, as could be arranged. Thereafter, on August 27, 1914, the defendant gave to the different parties concerned in the shipment, including the plaintiff, a notice in writing signed by the defendant as follows: "Be advised that on Sept. 30, 1914, a shipment designated as a carload of hay shipped from Tentogany, O., April 29th, 1913, by the Interstate Hay Co.,

consigned to Order Interstate Hay Co. destined Elizabeth, N. J., reconsigned F. Williams, Brooklyn, N. Y., will be disposed of at Public Auction, for account it may concern, at 11 A. M. at the Brooklyn Eastern District Terminal Warehouse, located Corner N. 10th St. and Kent Ave., Brooklyn, N. Y." And also gave notice of said sale by public advertisement. On September 30, 1914, pursuant to the notice the defendant caused the carload of hay to be sold, and it realized $35, which amount was collected by plaintiff from the auctioneer and applied by it on account of the storage and handling charges. The amount which the plaintiff claims is $356 for storage charges at its terminal on said hay, which it is stipulated was "the fair and reasonable value of the storage of said hay at the plaintiff's warehouse during the period in question and is computed at the rate mentioned in the tariff filed by the defendant as aforesaid." Plaintiff also claims the sum of three dollars for handling charges, as to which there is no stipulation. The amount to which plaintiff was entitled under the contract was seven dollars and twenty-one cents, which amount has been paid plaintiff by defendant in their regular monthly settlement. The plaintiff claims that its services in storing the hay as aforesaid, after the expiration of the forty-eight hours' free time, are not included in the services which the plaintiff under its said contract with the defendant is bound to render for the compensation therein stipulated; but that such services were outside of its contract obligations to the defendant, and were rendered to the defendant at its special instance and request, upon its implied promise to compensate the plaintiff therefor at the reasonable value thereof and at the rate mentioned in the defendant's tariffs. The defendant claims that all of the services rendered by the plaintiff in the matter are included within those which the plaintiff is bound to render under its said contract, for the compensation therein stipulated, viz., the sum of seven dollars and twenty-one cents, and it also claims that it is entitled to said sum of thirty-five dollars as first applicable to its freight charges, advances and demurrage charges.

The agreed statement of facts does not contain any statement as to how the carload of hay came to be held for the

period of one year from the date of its receipt at the Terminal, but the correspondence sufficiently shows, and it is accepted as a fact and used as a basis for argument in the briefs of counsel on both sides, that the retention of the hay for one year was in compliance with the provisions of section 68 of the Railroad Law (Consol. Laws, chap. 49; Laws of 1910, chap. 481), under which freight must be held for a year before it can be sold for the charges thereon. The correspondence between the parties demonstrates, I think, as well, that both the Railroad and the Terminal treated this carload of hay as property under the control and subject to the order of the Railroad. The Terminal never attempted to interfere in any way with the hay or to dispose of the same, but many times notified the defendant that the storage charges were accumulating, called upon it to make some disposition of the goods, and advised it that it would look to the Railroad for the storage charges. Of course the Terminal could have removed any doubt as to the status of the shipment by notifying the Railroad to remove the hay unless it agreed to pay the storage charges thereon, but I think the letters prove that both parties treated the transaction as the storage by the Terminal of freight which the Railroad was bound to hold for a year under the law before it could be sold to pay charges, and while the goods were in the possession of the Terminal they were subject to the order only of the Railroad, in the absence of a willingness upon the part of the consignee to receive them. The rate fixed by the tariff filed with the Interstate Commerce Commission was of course contractual only between the shipper and the Railroad. It would not have furnished a basis for the amount of the charge to be made by the Terminal against the Railroad but it is conceded that that rate was a fair and reasonable charge for the plaintiff's services in storing the hay. There is no contention that any charge could properly be made for storage until the expiration of forty-eight hours after the arrival of the shipment, Sundays, full holidays and the day of arrival not included. As storage beyond that period was to be paid for, as the storage of the hay by plaintiff was at defendant's request, and as the contract between the Terminal and the Railroad contained no provision by which the Terminal was to furnish storage facilities either

with or without compensation, and as storage of freight is no part of the services recited in the contract for which the compensation of three cents per 100 pounds was to be paid, it follows that the Terminal was entitled to receive the fair and reasonable value of the storage from the defendant. The defendant contends that because among the facilities of the plaintiff's assignor recited in the preamble of the contract are enumerated warehouses and hay sheds, therefore the compensation paid includes the use of all the facilities which the plaintiff possessed. But these recitals do no more than set forth that plaintiff's assignor had the necessary facilities for the reception and delivery of freight and for its carriage, and the very recitals themselves limit these facilities to three purposes, reception, delivery and carriage, and contain no reference to storage. It would seem to be an unwarranted extension of the contract to hold that because its recitals enumerated certain facilities which the plaintiff's assignor possessed that thereby he was bound to render gratuitously, or as part of the service for which he was to be compensated, a service nowhere referred to in the contract and which is not even embraced therein by implication. The Railroad had full control of this shipment and if it desired to retain it for a year and was unable to make any other disposition of it by arrangement either with the consignee or consignor, it was at liberty to withdraw it from the custody of the Terminal and care for it itself, which right is reserved to the carrier by the bill of lading. If instead of so doing, and with knowledge that the Terminal was looking to it for the storage charges, the carrier elected to allow the property to remain stored in the Terminal's warehouse until the expiration of the year, and requested the Terminal to store it for said period, at the end of which time the carrier itself ordered the sale of the goods to pay the charges, then the carrier must pay the Terminal the fair and reasonable value of the services rendered by the Terminal in storing the freight for the period in question.

Inasmuch as the stipulation as to the reasonableness of the charge applies only to the item of $356 and not to the item of $3 for handling charges, judgment will be entered in favor of the plaintiff in the sum of $321 (being the $356 storage charges

less the $35 received by plaintiff from the sale of the hay), with interest thereon from October 12, 1914, and under the stipulation, without costs.

CLARKE, P. J., LAUGHLIN, SCOTT and SMITH, JJ., concurred.

Judgment ordered for plaintiff, as directed in opinion, without costs. Order to be settled on notice.