ERIE RAILROAD COMPANY, Plaintiff, *v.* F. KIESER & SON, INC., Defendant.

*Supreme Court, Tioga County, June 30, 1925.*

**Carriers — shipping and storage charges — action to recover shipping and storage charges on merchandise delivered to defendant as consignee — carrier, on defendant's failure to accept merchandise, held shipment in warehouse for one year and sold it at public auction — shipping and storage charges exceeded sale price — carrier, as bailee for shipper, must enforce lien for storage charges within reasonable time — accumulation of excessive and unreasonable charges for storage proper defense to action — counterclaim predicated upon threat of carrier to sell merchandise in illegal manner insufficient and stricken out.**

A carrier, as bailee for a shipper, may not hold goods for protection of a lien and charge for indefinite storage to the prejudice of the shipper. It must enforce its lien within a reasonable time so as to limit the damages resulting from the breach of contract.

Accordingly, in an action to recover shipping and storage charges on merchandise delivered to the defendant as consignee, defenses alleging that the carrier unreasonably caused and permitted said charges to accumulate in an excessive amount by the adoption of an unreasonable method in the disposition of said merchandise, were proper, legal and sufficient in law upon their face, where it appears that upon defendant's failure to accept said merchandise, the carrier held the shipment in one of its warehouses for a year and sold it at public auction at a price less than the shipping and storage charges, though said merchandise could have been stored with warehousemen whose rates were less than plaintiff's rates.

Said defenses do not seek to raise the question that the rates for transportation, storage and demurrage as scheduled in plaintiff's tariffs are unreasonable, but rather that said rates have been unreasonably and improperly applied, and, therefore, it was not necessary that the matter be first brought before the Interstate Commerce Commission.

However, defendant's counterclaim alleging that the carrier notified defendant that the shipment had been refused by defendant's consignee and unless disposition orders were received forthwith, said carrier would sell such merchandise at public auction to the highest bidder without further notice to defendant, thereby converting said freight to its own use, is insufficient in law and should be stricken from defendant's answer, since it cannot be said that the mere threat of the carrier to sell said merchandise in a manner not permitted by law amounted to such an exercise of dominion over said merchandise as to constitute conversion.

MOTION by plaintiff to strike out certain defenses and counterclaims upon the ground of insufficiency and lack of jurisdiction.

*Stanchfield, Collin, Lovell & Sayles,* for the plaintiff.

*Frederick W. Hawkes,* for the defendant.

RHOADES, J.:

Plaintiff, a common carrier, brings this action to recover shipping and storage charges on a carload of bran, the property of the defendant. The car in question was originally shipped from Minneapolis to the city of Toledo, O., where the defendant became the owner thereof about December 21, 1920, and such owner as consignor caused it to be shipped from Toledo, O., to Conewango, N. Y., to himself as consignee, with instructions to the carrier to notify Luce Brothers at Ellington, N. Y., of its arrival. The freight arrived at Conewango about December 31, 1920, and on January 1, 1921, plaintiff carrier notified the defendant consignee and also Luce Brothers at Ellington, N. Y., of such arrival. Both defendant and Luce Brothers refused to accept said shipment and failed to advise plaintiff what disposition should be made thereof. The carload of freight was held by the plaintiff at Conewango until about January 21, 1921, when it was transported by the plaintiff to the city of Buffalo, N. Y., and held in the car until about January 28, 1921, when it was unloaded by the plaintiff and placed in plaintiff's freight house in said city, where it remained until January 19, 1922, when it was sold by plaintiff at public auction to the highest bidder for the sum of $675. The shipping and storage charges, including demurrage, exceeded the amount realized upon the sale and were made up of the following items: Shipment Minneapolis to Conewango, $217.63; demurrage at Conewango, $63; demurrage and storage at Buffalo, $1,465; unloading at Buffalo, $20.55; reloading, $14.51; also publishing and advertising the sale, $14.40. Plaintiff now seeks by this action to recover against defendant the balance of its charges, amounting to $1,173.51, with interest.

The foregoing facts are alleged in plaintiff's complaint. Defendant has interposed an answer consisting of separate defenses and counterclaims, and plaintiff now moves to strike out the defenses designated as " third," " fourth " and " fifth " and the counterclaims designated as " fourth " and " fifth " of the answer, on the ground that each of said defenses is insufficient in law upon the face thereof; that each of such counterclaims fails to state facts sufficient to constitute a cause of action, and that the court had not jurisdiction as to the counterclaim designated as " fifth." The defense designated as " third " and the defense and counterclaim

designated as " fifth " are based upon the proposition that the plaintiff unreasonably caused and permitted claims and charges to accumulate in an excessive and unreasonable amount, by adopting an unreasonable and unwarranted course of procedure in the handling and disposition of said freight, defendant's contention being that plaintiff's charges for holding and storing the merchandise are greatly in excess of the established prevailing rates for storage charged by available warehousemen of the vicinity, and that it was the duty of the plaintiff, after holding said merchandise sixty days and the refusal of defendant to receive the same, to place said merchandise in storage with warehousemen whose rates were less than plaintiff's rates and thus avoid the accrual of an unreasonable and excessive amount as a charge for handling and storage. Plaintiff insists that by such defense and counterclaim defendant is seeking to raise the question that the rates for transportation, storage and demurrage as contained in its tariffs and schedules are unreasonable; that as a preliminary to raising such question, the matter must first be brought before the Interstate Commerce Commission, and that the reasonableness of rates and charges cannot be attacked in court without preliminary resort to the Interstate Commerce Commission. (See *Great Northern R. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285; *Louisville & Nashville Railroad Co.* v. *Maxwell*, 237 id. 94.) There is no dispute about the proposition that resort must first be had to the Interstate Commerce Commission if the inquiry is directed to the reasonableness or unreasonableness of rates, tariffs and classifications, but the defendant does not question the reasonableness of the rates established by the carrier, defendant's contention being that the rates, although reasonable, proper and warranted in a case where they have application, have been unreasonably and improperly applied. The distinction between the enforcement of an unreasonable rule and an unfair enforcement of a reasonable rule, has been pointed out in *Pennsylvania R. R. Co.* v. *Puritan Coal Co.* (237 U. S. 121) which was an action for damages against a carrier for failure to allot to plaintiff its proper share of coal cars. There the court held that the rule establishing the method of distributing cars was not under attack, but that the question before the court was whether or not the rule had been applied properly. The court said: " But it must be borne in mind that there are two forms of discrimination — one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. * * * But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory

enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or Federal courts."

Section 68 of the Railroad Law of this State provides that a railroad having unclaimed freight or baggage in its possession for a period of sixty days may deliver the same to any warehouse company and take a warehouse receipt for the storage thereof; that upon such delivery and taking of such receipt such carrier shall be discharged in respect to any such unclaimed freight from and after such delivery. It further provides that in case any such railroad shall have unclaimed freight in its possession for a period of one year and shall not have delivered the same to a warehouse company, then such railroad company may proceed to sell the same at public auction after proper notice. It will be observed that this section permits the carrier either to place unclaimed goods in the hands of a warehouseman after sixty days, or to hold the goods for one year and then sell them. The statute is permissive, not mandatory, as to which method of disposition the carrier shall adopt. Plaintiff refers to the case of *Brooklyn E. D. Terminal* v. *Central R. R. Co. of N. J.* (176 App. Div. 352; affd., 225 N. Y. 712), but that case did not determine the statute to be mandatory as to which alternative is to be adopted. There a transportation company brought action against a defendant railroad company to recover storage, warehouse and other charges on a carload of hay. The shipment was held by the plaintiff for a year with the consent and at the request of the defendant. The question there at issue was whether or not the storage charges claimed by the plaintiff were properly embraced in and recoverable under the contract between the parties. The action involved the construction of the contract between them.

The defendant insists that the plaintiff having two methods of procedure open to it, was bound to adopt the course which would minimize the amount of charges against defendant, and that a reasonable course of dealing required plaintiff to dispose of the merchandise when the freight and other charges approached near the value of the freight stored. Defendant's contention seems to be supported by the case of *Morgan* v. *Murtha* (18 Misc. 438), decided by the Appellate Term of the Supreme Court on an appeal from the City Court of New York. There it was held that a warehouseman has no right to hold goods for the protection of a lien and charge for storage indefinitely, to the prejudice of the

bailor; but it is his duty to enforce his lien within a reasonable time, and thus limit the damages resulting from the breach of contract. (See, also, *Dale* v. *Brinckerhoff*, 7 Daly, 45.) The same rule and reasoning would seem to apply to carriers, in their relation as bailees, as to warehousemen. At any rate, the statute does not impose any other or different rule.

The issues thus raised by the defense designated as " third " and the defense and counterclaim designated as " fifth," therefore, present questions involving the consideration of facts which can be determined only after a trial. The issues thus raised are proper and legal and are sufficient in law upon their face.

The facts alleged in the defense and counterclaim designated as " fourth " are of a different nature. By them the defendant alleges that the plaintiff notified defendant that the shipment had been refused by the consignee and was being held by the plaintiff as refused freight and that unless disposition orders were received by plaintiff forthwith, it would sell such freight at public auction to the highest bidder at such time and place as it might determine, without advertisement and without further notice; that by such notification the plaintiff waived and lost any lien it might otherwise have had for existing charges for handling and storage and for future charges for handling and storage, and thereby converted said freight to its own use. It is not alleged that the plaintiff did sell, without notice to the defendant and in violation of the statute, although defendant, by its answer, denies the allegation of plaintiff's complaint to the effect that the merchandise was sold by plaintiff at public auction to the highest bidder in accordance with the law and statute relating thereto. Plaintiff already had the merchandise in its possession. Defendant refused to receive it or to give directions for its disposition after repeated notice from plaintiff. Under the circumstances it should not be held that the mere threat of the plaintiff to sell in a manner not permitted by law amounted to an exercise of dominion over the property inconsistent with defendant's title or with plaintiff's rights therein as bailee so as to constitute a conversion. The facts alleged in said defense and counterclaim are, therefore, insufficient upon the face thereof.

The plaintiff's motion should, therefore, be granted in so far as to direct the striking out of the defense and counterclaim designated as " fourth," and should be denied as to the defense designated as " third " and the defense and counterclaim designated as " fifth," without costs to either party.