## CHILDS v. COUNTY TRUST CO. OF NEW YORK.

District Court, S. D. New York.
Jan. 16, 1933.

Zalkin & Cohen, of New York City, for plaintiff.

Daniel J. Mooney, of New York City (Saul S. Myers and Selden Bacon, both of New York City, of counsel), for defendant.

822

PATTERSON, District Judge.

Suit in equity was brought by the trustee in bankruptcy of Singer Furniture Corporation to recover the sum of $15,000 from the defendant bank. By consent of the parties the case was sent to a special master to hear and report. The special master has reported in favor of the bank recommending that the suit be dismissed without costs, and the case is here on exceptions filed by the trustee.

The bankrupt was a New York corporation engaged in business as a retail furniture dealer. One Kritzer, secretary of the company, managed its affairs. His wife was also an officer and director. The stock was owned entirely by Kritzer, his wife, and his father-in-law. On August 7, 1928, the bankrupt was indebted to the bank upon two notes, one for $7,500 due September 7, 1928, and the other for a like amount due October 5, 1928. Both notes bore the indorsements of Kritzer and his wife. On August 7, 1928, Kritzer stated to the bank that as the business was not making money it had been decided to liquidate it. On the same day, in satisfaction of the unmatured debt, he paid the bank $5,000 by the bankrupt's check upon its account with the bank and executed four new notes, each for $2,500 and due on August 20, August 31, September 10, and September 24. The new notes were made by the bankrupt and were indorsed by Kritzer and wife. As they fell due they were paid by the bank's debiting them against the bankrupt's account. These are the payments complained of by the trustee.

There is no doubt that on August 7th and continuously thereafter the bankrupt was insolvent, both in the sense that its liabilities exceeded its assets and in the sense that it was unable to meet its obligations as they matured. Nor is there the least doubt that Kritzer was aware of the insolvency. For many months the business had been carried on at a loss. In the year ending May 31, 1928, there had been a loss of some $40,000, which reduced the then net worth according to the books down to $11,000. A further loss of $3,500 had been suffered for the month of June. On August 6th, the day before the $5,000 payment, the bankrupt sold for $600 such store fixtures as it did not abandon. These fixtures had been carried on the books at $20,000. By this transaction there was a deficit on the bankrupt's own books of $12,000; the real deficit was larger. At the same time arrangements were made for the bankrupt to vacate the store by September 22, 1928, and for another concern to move in.

Two weeks later there was an auction sale at which practically all the merchandise was sold, realizing about $11,000. At about the same time the bankrupt sold accounts receivable totaling $10,000 for $6,900. It is plain that the insolvency that existed on August 7th became progressively worse until September 26th, when an involuntary petition in bankruptcy was filed. At that time the bankrupt had assets of $20,000 against liabilities of $60,000.

The bankrupt had no bank account other than that with the defendant. In this account the daily balance during August and September ranged for the most part from $4,000 to $17,000. On August 6th it was $10,534.24. At bankruptcy it was $10,036.35.

Suit was brought in June, 1929. The plaintiff's claim to recover the $15,000 is based on two charges. The first is that the payments were preferences voidable under section 60b of the Bankruptcy Act (11 US CA § 96 (b). The second is that the payments were invalid under section 15 of the New York Stock Corporation Law (Consol. Laws, c. 59), which then provided that no transfer by a corporation should be valid "when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors," except as to purchasers for valuable consideration without notice.

The special master made findings of fact and conclusions of law in favor of the defendant. Among other things, he found that the bankrupt had no intent to prefer the bank and also that the bank had no reasonable cause to believe that it was being preferred over other creditors. The bank now insists that in a reference on consent the findings of a master on the facts are conclusive if supported by any evidence. This is doubtless the rule where the reference is on consent and is to hear and decide the issues in the case. Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764. But it is not the rule where the reference on consent is merely "to hear and report." In cases of the latter type the master's findings of fact are treated as no more than advisory and the district judge has full power to review them. Denver v. Denver Union Water Co., 246 U. S. 178, 38 S. Ct. 278, 62 L. Ed. 649; Detroit Carrier & Mfg. Co. v. Dodge Bros. (C. C. A.) 33 F.(2d) 743. Here the reference which was stipulated was one to hear and report. The court therefore has the duty of reviewing the facts.

The trustee did not make out a case of voidable preference under section 60 of the

Bankruptcy Act (11 USCA § 96). The proof does not show that the bank had reasonable cause to believe that the payments to it would result in its being preferred over other creditors, and some such proof is of course necessary to render a preference voidable under the Bankruptcy Act. The bank did know that Kritzer had decided to wind up the business, that he wanted the maturities of the notes shortened, and that he and his wife were contingently liable on the notes. That is all that it knew. Its part in the transactions was a passive one throughout.

The case under the New York Stock Corporation Law raises other issues. For a recovery on this ground a plaintiff must show that at the time of the transfers the financial condition of the corporation was such that its insolvency was existent or at least imminent, and the insolvency referred to in this statute signifies an inability to meet its obligations as they mature. Brouwer v. Harbeck, 9 N. Y. 589; Abrams v. Manhattan Brewing Co., 142 App. Div. 392, 126 N. Y. S. 844; Bielaski v. National City Bank (D. C.) 58 F.(2d) 657. He must also prove that a preference was intended. There is a distinction between a transfer made by a corporation which, though insolvent, has fair hopes that it will pull through a temporary emergency and pay all creditors equally, and a transfer where it is realized that the chances are that other creditors will not receive as favorable treatment. On the question of intent, the question is whether the transfer was made in contemplation of continuing business in good faith, or in contemplation of insolvency and winding up as an impending fact. Van Slyck v. Warner, 118 App. Div. 40, 103 N. Y. S. 1, affirmed in 192 N. Y. 547, 84 N. E. 724; Wills v. Venus Silk Glove Co., 170 App. Div. 352, 156 N. Y. S. 115; Cardozo v. Brooklyn Trust Co. (C. C. A.) 228 F. 333. But the plaintiff was not required, under the statute as it stood in 1928, to make a showing as to the creditor's state of mind. How much the creditor knew or believed as to the debtor's intent or as to the effect of the transfer is of no significance. Brouwer v. Harbeck, supra; Bielaski v. National City Bank, supra.

In this case the bankrupt was insolvent as early as August 6th. By that date it had ceased meeting its bills in the ordinary course of business. The existence of an intent to prefer the bank is equally clear. It was proved that by August 6th Kritzer had decided to wind up the business in September and was in actual course of liquidation. He knew the condition of the company and realized that all creditors would not be fully paid. It was to his personal interest, however, to make sure that the debt owed to the bank was paid in full, for he and his wife were individually liable on that debt. So the bankrupt under his guidance commenced paying the bank off before maturity, in order that Kritzer and wife might escape personal liability. There can be no doubt that this was Kritzer's motive in arranging for an acceleration of the notes. In this respect the situation is similar to that in Grandison v. Robertson (C. C. A.) 231 F. 785, and in Kolkman v. Manufacturers' Trust Co. (C. C. A.) 27 F.(2d) 659, where officers who had indorsed commercial paper for their companies saw to it that the companies paid up those particular obligations before the debacle. See, also, Smith v. Powers (D. C.) 255 F. 582.

The point is made by the bank that even if the payments were declared void, the effect would be merely to increase by $15,000 the bankrupt's balance on the date of bankruptcy, against which the bank would have the right to set off the $15,000 notes. The answer is that it is the deposits that are the objectionable transfers—deposits made by an insolvent debtor to give the bank the means of applying them in payment of the notes or of using them as a set-off. This is certainly the rule laid down by the Circuit Court of Appeals in the Kolkman Case, supra, and also in Matters v. Manufacturers' Trust Co. (C. C. A.) 54 F.(2d) 1010, 1013. Upon the facts in the present case there is no question but that Kritzer from August 7th on meant to deposit and to leave on deposit enough money to clear off the new notes that he had executed. The fact that he deposited more does not change his intent. But the bank's point is meritorious as to the balance of $10,534.24 in the bankrupt's account on August 6th. There is no proof that any of the deposits that made up this sum had been placed there with preferential intent. To this extent, therefore, the bank would have the right of set-off. Kolkman v. Manufacturers' Trust Co., supra; Matters v. Manufacturers' Trust Co., supra.

The further point is made that there were two responsible indorsers on the notes, that by the transaction the bank lost its right of recourse against them, and that this constitutes the bank a purchaser for value within the meaning of the New York statute. The point is a good one where indorsers have nothing to do with the preferential payment (Perry v. Van Norden Trust Co., 192 N. Y. 189, 84 N. E. 804), but not where they par-

ticipate in it (Kolkman v. Manufacturers' Trust Co., supra). Here Kritzer played the leading part in the affair, both as to what happened on August 7th and as to the later preferential deposits made by the bankrupt. He then was not discharged and the bank lost no right of recourse against him. But the case is otherwise with his wife. Though an officer and stockholder of the bankrupt, she took no part in running the business and apparently had nothing to do with the building up of the deposits. Under such circumstances it must be held that the bank lost its rights over against her and was a purchaser for value without notice as to all the payments. Matters v. Manufacturers' Trust Co., supra, at page 1014 of 54 F.(2d).

While the master was in error in finding that the bankrupt had no intent to prefer the bank, he was right in concluding that the bank was a purchaser for value without notice within the meaning of the New York statute and that the suit should be dismissed on the merits.

The bill will accordingly be dismissed.