### ABRAMS v. MANHATTAN CONSUMERS' BREWING CO. et al.

(Supreme Court, Appellate Division, First Department. January 6, 1911.)

1. CORPORATIONS (§ 537*)—"INSOLVENCY"—WHAT CONSTITUTES.
    That the assets of a corporation are less than its liabilities does not necessarily constitute insolvency if the corporation is able to pay its obligations as they become due in the regular course of business, but, if the corporation transfers all its property and abandons business when its assets are known to be less than its liabilities, it is insolvent to the knowledge of its officers and of a bank which had control of the business of the corporation.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2150; Dec. Dig. § 537.*
    For other definitions, see Words and Phrases, vol. 4, pp. 3647–3655; vol. 8, p. 7689.]

2. CORPORATIONS (§ 544*)—INSOLVENCY—PREFERENCE OF CREDITOR.
    Stock Corporation Law (Consol. Laws, c. 59) § 66, provides that no conveyance by an insolvent corporation, nor any payment when the corporation is insolvent or its insolvency is imminent, "with the intent of giving preference to any particular creditor over other creditors of the corporation, shall be valid." Held, that transfers by an insolvent corporation of its property are not invalidated by this section, unless the existence of the claim of the creditor attacking the transfer is known by the corporation and the transferee of the property when the transfer is made.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2162–2169; Dec. Dig. § 544.*]

    Clarke, J., dissenting.

Appeal from Special Term, New York County.

Action by Joseph M. Abrams against the Manhattan Consumers' Brewing Company and the Manufacturers' & Traders' Bank of Buffalo for a sequestration of the property of the brewing company, and to compel the bank to account for moneys received by it. Judgment was rendered for plaintiff (68 Misc. Rep. 166, 123 N. Y. Supp. 663), and the Manufacturers' & Traders' Bank of Buffalo appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

George G. Battle, for appellant.
C. L. Hoffman, for respondent.

DOWLING, J. This action is brought by plaintiff, a judgment debtor of the Manhattan Consumers' Brewing Company, for a sequestration of its property, and to compel the defendant Manufacturers' & Traders' Bank of Buffalo to account for moneys received by it, being the proceeds of the sale of the real and personal property

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

of the judgment debtor. The plaintiff had judgment in his favor upon the trial upon the theory that the payments made to the bank were made when the brewing company was insolvent and with the intent of giving a preference to the bank over the other creditors of the corporation.

The brewing company was organized in 1900, and its principal place of business was located in the borough of Manhattan, city of New York. It has been found as a fact by the learned trial court that the organization of the company was brought about on behalf, and in the interest, of the bank, and that its business was dominated by the bank. In the month of January, 1905, the judgment debtor sold to a corporation known as the Consumers' Park Brewing Company all the goods, chattels, and other personal property owned by it in connection with its brewing business, including specifically chattel mortgages held by it against its customers, saloon fixtures, bills receivable, licenses, leases, and all other instruments binding its trade and good will, its cooperage, and rolling stock, horses, wagons, harness, and appurtenances for the sum of $30,000, to be paid in 12 notes of $2,500 each; one thereof being payable every two months thereafter. The Consumers' Park Brewing Company further agreed that it would take steps to finish the beer and ale on hand and make the same marketable at its own cost and would sell and dispose of the same to the customers of the judgment debtor, collect therefor in the usual manner, and, when collections had been made, pay the judgment debtor at the rate of $2.50 for each barrel so sold. It also agreed to collect the license installments due and all other outstanding accounts and pay the same, less 10 per cent., to the judgment debtor. Pursuant to the agreement last set forth, the sum of $4,853.31 was paid on or about January 19, 1905, to the defendant brewing company for hops and malt previously delivered and for unfinished material, and a further sum of $1,936.56 on or about May 29, 1905, in consideration of which the defendant brewing company sold to the new company all of its remaining outstanding accounts of the face value of $11,239.99. Thereafter, and in June, 1905, the defendant brewing company contracted to sell its real estate to Charles A. Chrustman, who took title thereto on July 17, 1905, by deed duly recorded July 20, 1905. The purchase price therefor was $96,000, which was paid by the vendee accepting the premises subject to a first mortgage of $65,000, the balance of $31,000 being paid in four checks. At the time of the transfer, there were two mortgages past due upon the said realty, one for $60,000, and the other for $35,000, both held by the defendant bank. They were satisfied of record at the time of the transfer. One of the checks received on this transfer being for $10,000 was indorsed directly to the defendant bank, and the proceeds of the other checks, after payment of various charges, were also received by it. The notes given upon the original sale of the personalty were turned over to the defendant bank, and were thereafter paid in full to it by the maker. From the collections and license installments paid by the new company to the defendant brewing company, payments were made to the defendant bank, varying in amount from $500 to $1,500 per week until May 20,

1905, at which time the bank account of the defendant brewing company was closed. After the sale of the personalty, as aforesaid, the defendant brewing company did no business of any kind. By these successive transfers the defendant brewing company stripped itself of all its property of every kind and nature. In the beginning of January, 1905, when the first of this series of transfers was made, it was indebted to the defendant bank in a sum far in excess of all the moneys thereafter received by said bank, either from the brewing company or as the result of the sale of its property. All the creditors of the brewing company have been paid with the exception of the plaintiff, and the only question involved in this appeal is his right to have such transfers as were made to the defendant bank treated as void as against him, and to have an accounting for the sums realized thereunder. There can be no doubt in this case that the defendant bank is chargeable with full knowledge of the condition of the brewing company. Two of the three directors of the brewing company were members of the firm of attorneys representing the bank, and the assistant cashier of the bank was the assistant secretary of the brewing company.

The court has found that, at the time of the various payments to the bank, the liabilities of the defendant brewing company exceeded its assets, and that that was known to the officers of the brewing company. It has also found that the sale of the brewing company's property and the discontinuance of its business were brought about by the desire of the defendant bank to recover the moneys loaned by it to the brewing company, which it had begun to loan from the time of the organization of that company. At the time of the payments to the bank there were unsatisfied judgments in favor of others than the plaintiff, but those have since been discharged. There is no expressed finding that the brewing company was insolvent at the time these payments were made nor at any other time; nor is there any finding as to how long the condition of an excess of debts over assets had existed. Ordinarily, of course, the mere fact that the assets of a corporation are less than its liabilities does not necessarily constitute insolvency. The test is a general inability on the part of the corporation to pay its obligations as they become due in the regular course of business. But this proceeds upon the theory that the corporation is continuing in business, and therefore has reason to expect changed conditions which will improve its financial standing and enable it to meet its debts as they mature. That has been termed an honest expectation in the exercise of reasonable intelligence, entertained sincerely and in good faith, of going on with its business and paying all of its debts. Curtis v. Leavitt, 15 N. Y. 9. But in this case, where the corporation had parted with all its property, real and personal, and had abandoned business after the first of those transfers was made, there could never have been entertained any expectation that it would be able to meet its obligations, when its assets were known to be less than its liabilities after it had realized an adequate consideration for all its property. As a matter of fact, it is still indebted to the defendant bank; so that, upon the facts proved and

found, a finding would have been warranted that at the time of those transfers the brewing company was actually insolvent to the knowledge of its officers and of the defendant bank. But this recovery is had pursuant to the provisions of section 66 of the stock corporation law (Consol. Laws, c. 59), and the particular clause upon which reliance is had is as follows:

"No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."

It seems clear that the intent to create a preference in favor of one creditor over another must be present before this section becomes operative. The infirmity of the plaintiff's claim is that this record is lacking in any proof that at the time when the various transfers were made either the brewing company or the bank knew of the existence of any claim whatever upon the part of the plaintiff. If plaintiff's claim to be a creditor was unknown to either the brewing company or the bank, there could have been no intent to prefer the bank over him as a creditor.

The judgment roll in the action in the City Court wherein plaintiff recovered judgment is not printed in the case on appeal. All that appears therein is the statement upon the trial of this cause of plaintiff's counsel that the cause of action was upon an agreement by which plaintiff was to procure a customer for defendant in the purchase of its beer, and that for plaintiff's services defendant promised to pay plaintiff the sum of 25 cents on each barrel of beer, ale, or porter sold to such customer, and that, pursuant to such agreement, there were sold by the brewing company to that customer between the beginning of April, 1904, and the end of March, 1905, beer, ale, and porter amounting to 4,602 barrels, by reason whereof plaintiff became entitled to the sum of $1,150.50. It was not indicated whether the agreement was oral or in writing. The action was commenced July 5, 1905, after the making of the last of the transfers by the brewing company. A judgment was recovered November 22, 1905, for the full amount of plaintiff's claim, with interest. There is nothing to indicate how much of this claim thus reduced to judgment was for beer sold after the date when the brewing company discontinued business; nor does it appear when or upon whom the summons in that action was served. There is no suggestion that plaintiff's claim, thus sued upon, was ever brought to the attention of either the brewing company or the bank before the transfers were made. In this condition of the record, it seems clear that without knowledge upon the part of either of them of any claim of plaintiff to be a creditor there could have been no intention upon the part of either to prefer another creditor over him.

We are not unmindful of the fact that the procedure herein followed is a method of effecting the practical dissolution of a corporation without resorting to the procedure required by law to that end; but we are not now concerned with the question of the liability of the directors of the brewing company, but only with the effect of the

transfers made by it under the conditions disclosed by this record, and upon these it seems obvious that the statute quoted does not apply.

The judgment appealed from must therefore be reversed and a new trial ordered, with costs to appellant to abide the event.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur. CLARKE, J., dissents.