## In re WIL–LOW CAFETERIAS, Inc.

District Court, S. D. New York.
Nov. 16, 1937.

Mitchell, Taylor, Capron & Marsh, of New York City, for 650 Madison Avenue Corporation.

Chadbourne, Hunt, Jaeckel & Brown and Louis Shapiro, all of New York City, for debtor.

Rabenold, Scribner & Miller, of New York City, and Duberstein & Schwartz, of Brooklyn, N. Y., for Unsecured Creditors' Committee.

Archibald Palmer, of New York City, for preferred stockholders.

PATTERSON, District Judge.

The debtor conducts a chain of restaurants. On April 20, 1937, it filed a petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petition was approved and the debtor left in possession. The petition contained the usual allegation that, while assets were greater than liabilities, the debtor was unable to meet its debts as they matured.

One of the restaurants is in premises leased by the debtor from 650 Madison Avenue Corporation. There are two leases. A lease covering a portion of the premises is dated July 14, 1933, to run from November 1, 1933, to September 30, 1943. A second lease dated November 1, 1934, to commence December 1, 1934, and to expire March 31, 1940, covers the other part of the premises. Both leases reserve to the lessor the right to terminate and cancel the lease "if the lessee shall become insolvent, or shall make an assignment for the benefit of creditors under the laws of any State, shall file a petition in bankruptcy under the laws of the United States or be adjudicated a bankrupt under such laws upon petition filed against it, or if a receiver or trustee of the debtor's property shall be appointed in such voluntary proceedings or after adjudication in such involuntary proceedings."

By letters of June 2, 1937, the lessor gave the debtor notice that it elected to terminate the leases for breach of condition, the termination to take effect ten days after receipt of notice. As breaches of condition, the lessor specified that the debtor had "become insolvent" and that the debtor had filed "a petition in bankruptcy." The lessor also specified nonpayment of rent and other charges under the leases. After receipt of this notice and on June 12, 1937, the debtor sent to the lessor's agent a check for $4,409.94 "in payment of the following items now due and payable under the lease covering the

premises at 640–50 Madison Avenue, New York City:

| | |
|---|---:|
| Balance of rent due for the month of May.. | $ 166.67 |
| Rent for the month of June, 1937............ | 2,666.67 |
| Electric current 2/24 to 3/24................... | 420.07 |
| "        "     3/24 to 4/20.................. | 419.54 |
| Steam—2/20 to 3/25........................... | 290.08 |
| "    3/25 to 4/20............................ | 253.73 |
| Water—2/3 to 3/3............................. | 65.85 |
| "    —3/3 to 4/21............................ | 127.33 |
| | |
| Total ................................. | $4,409.94 |

This payment made good all arrears in rent and other charges and was accepted by the lessor.

The present proceeding was then brought by the lessor to compel the debtor to surrender possession. The lessor contended that the debtor's admitted inability to pay debts as they matured was "becoming insolvent" within the meaning of the leases, also that the filing of the petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 was the filing of "a petition in bankruptcy," as those words were used in the leases, and that it had exercised its right to terminate the leases by its notice of June 2d. The debtor resisted. It denied that any condition giving the lessor the right to terminate had occurred, and it insisted that in any event the lessor's acceptance of the payment of June 12th was a waiver of any right to terminate. The referee to whom the case was sent as special master took the view that the debtor's inability to pay debts as they matured did not amount to insolvency, and that the filing of petition for reorganization was not the filing of a petition in bankruptcy. He accordingly reported that the lessor was not entitled to terminate the leases.

■ When the parties agreed that the lessor might terminate the leases in case the lessee should file "a petition in bankruptcy," they had in mind a petition in the familiar type of bankruptcy proceeding wherein the bankrupt's assets are liquidated and divided among creditors. Plainly this is true of the 1933 lease, an instrument made at a time when that type of bankruptcy proceeding was the only kind applicable to the debtor. I am inclined to believe that it is also true of the 1934 lease, although that lease was made after enactment of section 77B. While a proceeding for reorganization under section 77B is a proceeding in bankruptcy, Schwartz v. Irving Trust Co., 299 U.S. 456, 57 S. Ct. 303, 81 L.Ed. 348, it is not an ordinary proceeding in bankruptcy. It is of a special type in which a reorganization of the debtor's business is sought. See Continental Illinois Nat. Bank v. Chicago, etc., Ry. Co., 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110. The filing of the petition under section 77B was not the filing of a petition in bankruptcy within the intendment of these leases. In re Fulton Royal, Inc., 12 F.Supp. 480, D.C.N.Y.

■ The lessor had the right to terminate in the further event that the lessee should "become insolvent," and it is urged that the debtor admitted a condition of insolvency when in its petition for reorganization it confessed to an inability to pay debts as they matured. There is no sound answer to this contention. Insolvency may mean an excess of liabilities over assets; it has been so defined in the Bankruptcy Act of 1898, § 1 (15), 11 U.S.C. A. § 1 (15), a definition referred to by Williston as a legal novelty. 2 Williston on Sales, § 619. On the other hand, it may mean an inability to meet obligations as they mature in ordinary course of business. The latter is the time-honored meaning of insolvency when a merchant or trader is said to be insolvent and when there is no statute in force that specified another meaning. Toof v. Martin, 13 Wall. 40, 47, 20 L.Ed. 481; Thompson v. Thompson, 4 Cush., Mass., 127; Skirm v. Eastern Rubber Mfg. Co., 57 N.J.Eq. 179, 40 A. 769; 2 Williston on Sales, § 522; 2 Kent's Commentaries, 14th Ed., page *389, note; Remington on Bankruptcy, § 1740. It is the meaning commonly attached to insolvency by the New York courts, unless some other definition is demanded by statute. Brouwer v. Harbeck, 9 N.Y. 589; Denike v. New York & Rosendale Lime & Cement Co., 80 N.Y. 599; French v. Andrews, 81 Hun 272, 30 N.Y.S. 796, affirmed 145 N.Y. 441, 40 N.E. 214; Baker v. Emerson, 4 App. Div. 348, 38 N.Y.S. 576; Horrocks Desk Co. v. Fangel, 71 App.Div. 313, 75 N.Y. S. 967; Joseph v. Raff, 82 App.Div. 47, 81 N.Y.S. 546, affirmed 176 N.Y. 611, 68 N.E. 1118; Abrams v. Manhattan Consumers' Brewing Co., 142 App.Div. 392, 126 N.Y.S. 844. The leases in question being leases made in New York and covering real estate in New York, the parties will be taken to have used the word "insolvent" in the sense given it by the New York law and to have intended that the lessor might terminate the leases if the lessee should arrive at a condition in which it was unable to pay its debts in ordinary course as they matured. It is idle to discuss the policy behind the enactment of

section 77B, the question being not what the word "insolvent" meant to Congress in passing that act but what it meant to the lessor and the lessee when they wrote it into these leases. This conclusion is in accord with the view of Judge Knox in Re Schulte Retail Stores Corporation, 22 F.Supp. 612, decided March 27, 1937, concerning a lease wherein the lessor had the right to terminate in case the lessee should "become insolvent."

The debtor invokes the definition of insolvency given in the chapter of the New York Debtor and Creditor Law, Consol. Laws, c. 12, dealing with conveyances in fraud of creditors, enacted in 1925, article 10, § 270 et seq. It is there provided, section 271, that insolvency means an excess of liabilities over assets. But the suggestion that this statute represents a general New York definition of insolvency, rather than one limited to cases involving conveyances in fraud of creditors, cannot be countenanced. Willcox v. Goess, 16 F.Supp. 350, 363, D.C.N.Y. The debtor also calls attention to the fact that, when a proposed extension of one of the leases was under discussion in 1936, the lessor submitted a form wherein the filing of a petition under section 77B by the lessee was to give the lessor the right to terminate the lease. It is said that the submission of that form amounted to a concession by the lessor that the lease as it stood gave no right of termination on the lessee's filing a petition under section 77B. There is no merit in the point.

By the leases the lessor had the right to terminate in case the debtor should "become insolvent." The debtor did "become insolvent" within the meaning of the leases when it became unable to pay its debts in course of business. The lessor then gave notice of termination, as was its right. The remaining question is whether it waived the right to terminate and the notice of termination by accepting the payment later made by the debtor.

It is New York law that on breach of condition in a lease the lessor has an election between holding the lessee to the lease and insisting on his right of re-entry. Any act done by him with knowledge of the breach which recognizes the existence of the lease is an election to continue with the lease, a "waiver of the forfeiture." The taking of rent accruing after the breach, if it be taken with notice of the breach, is such an act. Ireland v. Nichols, 46 N.Y. 413; Collins v. Hasbrouck,

56 N.Y. 157, 15 Am.Rep. 407; Murray v. Harway, 56 N.Y. 337; Conger v. Duryee, 90 N.Y. 594. This is true even where the lessor has followed up the breach of condition by giving formal notice that the lease has been terminated; in such a case the later acceptance of payments which the lessee tenders as rent for subsequent months is an election to keep the lease alive, despite the lessor's insistence that he is accepting the payments without prejudice to his termination of the lease. Woollard v. Schaffer Stores Co., 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262.

These authorities would ordinarily be decisive in the lessee's favor. The fact that the payment was made by a company in course of reorganization which had been kept in possession by court order does not, under the circumstances here present, take the case out of the rule. It is true that such a debtor, like an equity receiver, has an election to adopt or reject a lease and need pay only for use and occupation in the meantime, from which it follows that acceptance by the lessor of payments for use and occupation by a receiver or debtor in possession does not amount to a waiver of a breach of condition in the lease. Model Dairy Co. v. Foltis-Fischer, 2 Cir., 67 F.2d 704. Here the payment made by the debtor was not a payment for use and occupation. The accompanying letter made it plain to the lessor that the payment was a payment of rent and other charges under the leases. The payment was described in the letter as one made "under the lease"; the payment included "rent" for the entire month of June, although the lessor had already indicated that for breach of condition the leases would terminate on June 12th; the payment included charges accrued prior to the bringing of the reorganization proceeding, charges which the debtor had no right to pay in full except on the basis of keeping the leases alive. These features distinguish the payment made in this case from the payment made in the Schulte Case, supra. See In re Montello Brick Works, 163 F. 624, D.C.Pa.

It is said that the breach of condition was a continuing one. The lessor, acting on that theory, served a second notice of termination on the debtor after receipt of the payment of June 12th. I am of opinion that the condition as to the lessee becoming insolvent was not a continuing one. The breach occurred when the lessee became insolvent, that is to say, when it

passed from solvency to insolvency. The New York courts do not regard such a breach as a continuing one. Ireland v. Nichols, supra; Conger v. Duryee, supra.

The lessor also relies on a clause in the leases to the effect that "receipt of rent with knowledge of any breach shall not be deemed to be a waiver as to any breach of any covenant or condition herein contained." This clause cannot be given the broad meaning carried on its face, for other clauses in the leases provide in detail that receipt of rent within a specified time after service of notice to terminate shall cure breach of covenant to pay rent. The clause may, however, be regarded as intended to cover all breaches of covenant or condition not otherwise provided for in the leases, and so cut down its validity may be assumed. But in this case there is more than the lessor's receipt of rent with knowledge of breach of the condition against becoming insolvent. In addition to receiving rent for a period subsequent to the announced date of termination, the lessor accepted payment of stale charges under the leases which the debtor had no right to pay in full except on the understanding that the leases were not being terminated. In effect, the lessor withdrew its notice to terminate the leases and assented to their continued existence; otherwise it had no right to take full payment for the stale charges. The clause relied on had no application to such a case.

There was a waiver of the right to terminate the leases on the ground that the debtor had become insolvent. The lessor's petitions for immediate possession or for leave to commence dispossess proceedings will be denied.