In re COMP III, INC., d/b/a Computerland Union, Comp VI, Inc., d/b/a Computerland Murray Hill, Murray Hill Computers, Inc., Debtors.

COMP III, INC., d/b/a Computerland Union, and Comp VI, Inc., d/b/a Computerland Murray Hill, Plaintiffs,

v.

COMPUTERLAND CORPORATION, Defendant.

Bankruptcy Nos. 91–B–12000(TLB) to 91–B–12002(TLB). Adv. No. 91–5892A.

United States Bankruptcy Court, S.D. New York.

Feb. 13, 1992.

Reisman Peirez, Reisman & Calica by Jerome Reisman, Garden City, N.Y., for plaintiffs.

Schnader, Harrison, Segal & Lewis by W. Michael Garner, New York City, for defendant.

## AMENDED DECISION ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge:

Not too long ago, Comp VI, Inc. ("Comp VI"), the New York City franchisee of

Computerland Corporation ("Computerland"), telephoned Computerland with the news that Comp VI would be filing a chapter 11 petition the following day. Forewarned, Computerland terminated the franchise before the day was out. At issue are the propriety and validity of that pre-filing termination.

The franchise agreement was signed on December 4, 1984 and later amended. A sister organization, Comp III, Inc. ("Comp III"), owned by the same individuals who own Comp VI, entered into a franchise for a Union, N.J. store in 1989. That franchise has not been terminated.

At first, the business of Comp VI and Comp III flourished. John Marchione ("Marchione"), chief financial officer of Comp VI and Comp III ("the plaintiffs"), swore that sales rose from $1.5 million in 1985 to $28 million in 1990. Unfortunately, though, losses were incurred in 1990 and '91. As a result the plaintiffs were notified early in April by ITT Financial Corporation ("ITT") that it intended to terminate the plaintiffs' inventory and accounts receivable financing within a month's time. Marchione communicated with Computerland immediately after receiving this troubling news. The parties met on April 12 to discuss the plaintiffs' financial problems. The discussions focused on closing the New York store (Comp VI) and keeping the Union New Jersey store (Comp III) open. Marchione contends that Computerland offered to pay $200,000 for Comp VI, and advised Marchione not to file a bankruptcy petition. He avers that a plan was adopted to close the New York store in an orderly manner and would have gone forward had he not been later advised by Computerland that any agreement was conditioned on ITT's consent to continuing the financing of the New Jersey store.

Marchione communicated with ITT and, he says, was advised by ITT that financing might be available if Comp VI and Comp III were to file Chapter 11 petitions.

Computerland asserts that it became aware of Comp VI's financial difficulties during a review of financial information provided by both franchisees and was advised that they were contemplating a bankruptcy filing during the April 12 meeting because of cash, sales tax, rent and payroll problems. Computerland admits that it made a $200,000 offer but characterizes it somewhat differently from Marchione. In Computerland's version, an agreement was reached with the plaintiffs to pay them $200,000 in some form of equity to fund the New Jersey store, to assist in an orderly liquidation of the New York store and to aid in negotiations with ITT. However, during the course of the liquidation, Computerland says it discovered that the franchisees had a negative net worth of $3.5 million and had lost close to $500,000 in the first four months of 1991. Computerland now says it concluded that Comp VI was insolvent and was unable to pay its debts as they came due because of the status of its accounts payable.

On April 29th, 1991, Marchione telephoned Computerland to advise it that a bankruptcy petition was being prepared. Later that same day, Computerland responded by terminating the franchise in accordance with section 8.2(a) of the franchise agreement which enabled Computerland to terminate the agreement in the event the plaintiffs were insolvent or unable to pay their debts as they came due. Bankruptcy petitions were filed by Comp VI and Comp III two days later.

Computerland contends that Comp VI's franchise agreement was lawfully terminated prior to bankruptcy, is not property of the estate and cannot be reinstated. The plaintiffs disagree, and have commenced this adversary proceeding alleging, *inter alia*, that the termination of the franchise agreement was wrongful. The plaintiffs seek to have the franchise agreement reinstated and damages of $5 million for the wrongful breach of an implied covenant of good faith and fair dealing. Originally the plaintiffs had asked me for injunctive relief to prevent Computerland's solicitation of existing Comp III customers, but that request has been withdrawn. Three other claims were also raised by plaintiffs which they wish to voluntarily dismiss

without prejudice pursuant to Fed.R.Civ.P. 41(a)(2).

During oral argument Computerland raised an issue which did not appear in its prior submission. Specifically, it contended that the law does not empower me to reinstate the franchise agreement, whether the termination is lawful or not. If the termination was wrongful, so the argument ran, the plaintiffs' only remedy is to seek an award of damages. I asked for additional briefing on this issue and have received supplemental memoranda of law.

Computerland has moved for summary judgment pursuant to Fed.R.Civ.P. 56 and Bankruptcy Rule 7056 on the first and fourth causes of action and to dismiss the second cause of action pursuant to Fed. R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012(b). Having received numerous affidavits and submissions from both parties which go beyond the scope of the pleadings, I am converting Computerland's motion to dismiss the second cause of action to one for summary judgment. *See* Fed. R.Civ.P. 12(b).

Pursuant to Fed.R.Civ.P. 56(c), made applicable to these motions by Fed. R.Bankr.P. 7056, summary judgment can be granted only where there are no genuine issues of material fact. Summary judgment must be denied where the facts in dispute will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Western World In-surance Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir.1990).

Here, the first two causes of action rely upon a central issue of material fact, the determination of which ultimately precludes my granting the relief requested. That issue is whether the evidence presented establishes that the plaintiffs were insolvent or unable to pay their debts as they came due at the time the franchise agreement was terminated by Computerland. A companion legal issue is whether 11 U.S.C. § 365(e)(1) applies to prepetition termination of executory contracts.

The plaintiffs argue that section 365(e)(1), which makes unenforceable so called *ipso facto* clauses that automatically terminate executory contracts in the event of a bankruptcy filing, applies here despite the fact that the defendant terminated the franchise agreement *prepetition*. As authority for this proposition, the plaintiffs cite *151 West Associates v. Printsiples Fabric Corp.*, 92 A.D.2d 76, 459 N.Y.S.2d 605 (1st Dep't 1983), *aff'd*, 61 N.Y.2d 732, 460 N.E.2d 1344, 472 N.Y.S.2d 909 (1984). In that case, the majority concluded that although section 365(e)(1) does envision the existence of a bankruptcy proceeding, this in no way negates the fact that Congress as a statement of public policy intended that an executory contract or unexpired lease not be terminated solely because of the lease forfeiture provision. The majority held that if such a clause is not to be given effect after the commencement of the bankruptcy proceeding, there can be even less justification for doing so in the absence of a proceeding. *Id.* Another bankruptcy court has disagreed with *Printsiples* language, considering it mere dictum, and has held that although *Printsiples* appears to void insolvency termination clauses outside of bankruptcy, such language was not necessary for disposition of the case. *In re Gordon Car and Truck Rental, Inc.*, 59 B.R. 956 (Bankr.N.D.N.Y. 1985).

The plaintiffs invite me to apply the *Printsiples* reasoning to the facts of this case as a matter of public policy. However enticing the invitation, I must decline it, as

I am of the view that where an executory contract has been terminated in accordance with its terms prior to bankruptcy, section 365(e)(1) does not authorize the bankruptcy court to reach beyond the veil of the petition to reinstate the contract. *See In re Wills Motors, Inc.*, 133 B.R. 297 (Bankr. S.D.N.Y.1991); *In re Seven Stars Restaurant Inc.*, 122 B.R. 213 (Bankr.S.D.N.Y. 1990); *In re Commodity Merchants Inc.*, 538 F.2d 1260 (7th Cir.1976). Nor has Congress the ability, in the absence of bankruptcy or an effect on interstate commerce, to legislate such a matter, which is purely a state law concern.

■ The next issue is whether Computerland was justified in terminating the franchise agreement. Section 8.2 of the agreement gave Computerland the right to terminate the franchise immediately upon issuance of notice to Comp VI without an opportunity to cure, if during the term of the agreement Comp VI was declared bankrupt or insolvent, or was unable to pay its debts as they came due.

Computerland says that it concluded Comp VI was insolvent because Comp VI had a negative net worth of $3.5 million as of April 22, 1991, and that its officers complained of cash, rent and other financial problems during the meeting of April 12, 1991. However, Comp VI's insolvency was not declared and I cannot determine from the facts before me whether it was or was not insolvent at the time.

Additionally, the franchise agreement does not specify which *meaning* of insolvency is to be applied in the event termination of the franchise is contemplated. Under the common law test, insolvency is defined as "whether there is a general inability on the part of the debtor to pay its obligations as they become due in the regular course of business." *In re Gordon*, 59 B.R. at 961. The balance sheet test of insolvency looks to the entire value of the debtor's assets to determine whether they are less than the entire value of the debtor's debts, excluding contingent or disputed liabilities. *Id.* Computerland asserts that Comp VI is insolvent under *both* tests and Comp VI disputes this. In oral argument,

Comp VI pointed to Marchione's affidavit and its counter statement pursuant to rule 13(h), in which it asserted "Comp VI has not 'admitted' its inability to pay debts as they come due contrary to defendants assertions." Comp VI contends that it always paid its bills late, and that Computerland's conclusion that overdue payables demonstrate an inability to pay obligations as they come due is wishful thinking and nothing more.

As the resolution of this dispute will affect the outcome of this adversary proceeding under governing law, I must deny defendant's motion for summary judgment on the first and second causes of action. *Anderson* 477 U.S. at 248, 106 S.Ct. at 2509.

During oral argument Computerland posited that the law does not empower a court to "reinstate" a contract that has terminated, whether the termination is lawful or not. Comp VI's only remedy is said to be an award of damages if the termination of the franchise agreement was unlawful. In Computerland's view, an award of both reinstatement and damages is unsupported by the record and unfounded in law.

Computerland argues that injunctive relief is not available to remedy the termination of Comp VI's franchise because injunctive relief may only be sought prior to termination in order to preserve the status quo and because it is hornbook law that injunctions will not issue to remedy past injury. *See Buckingham Corp. v. Karp*, 762 F.2d 257, 263 (2d Cir.1985).

To my mind, an award of reinstatement and damages *is* appropriate under certain circumstances. As the *Buckingham* court recognized, if there is a showing of irreparable ongoing or future injury and not merely past injury, the case law supports the granting of injunctive relief. *Id.* at 262, 263. A dealership franchise is a valuable asset, the loss of which may in some circumstances cause heavy damage. *Virginia Airmotive Ltd. v. Canair Corporation*, 393 F.2d 126, 127 (4th Cir.1968).

■ If the injury amounts essentially to a loss of sales and not to intrinsic dam-

age to the business, an injunction to reinstate the unlawfully terminated franchise is not appropriate. *Id.* (revocation of the franchise affected less than 10 percent of historical sales). However, where the complained-of action results not only in a contemporaneous loss of profits but in a loss of goodwill or the ability to compete as effectively in the marketplace, the relief should be granted. *Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621 (2d Cir.1969); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 (2d Cir.1977).

Ultimately, these cases turn on factual issues. In *Jacobson v. Armstrong*, as in our case, the central issue was whether Armstrong's termination of the dealership was wrongful. There, the court concluded that if the termination was legitimate, Armstrong would prevail. *Id.* at 440. By the same token, if the termination of Comp VI's franchise was unlawful, I may be empowered to reinstate the franchise.

Plaintiffs' original complaint contained three causes of action which they have subsequently voluntarily moved to dismiss, pursuant to Fed.R.Civ.P. 41(a)(2). The plaintiffs seek to voluntarily dismiss these causes of action in order to focus on issues which fall within the Court's jurisdiction. In light of the fact that the case is in its early stages, and, as articulated no cognizable prejudice will accrue to Computerland, plaintiffs' motion to dismiss without prejudice is granted and Computerland's motion for costs and attorneys fees is denied.*

---

* This decision was originally issued on December 2, 1991. It inadvertently decided the injunction request which had been withdrawn. At the request of the parties I am amending the decision to now delete the injunction discussion. As an order was previously entered embodying my ruling, no new order is needed.