**COMPUTER CURRENTS PUBLISHING CORP., and Computer Currents Licensing Corp., f/k/a Computer Currents Franchising Corp., Plaintiffs**

v.

**JAYE COMMUNICATIONS, INC., f/k/a Jaye Publications, Inc., Defendants**

**Civil Action No. 1:97–CV–143–WBH.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 25, 1997.

Samuel William Wethern, Kenneth S. Canfield, Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, for Plaintiffs.

Stephen Robert Risley, Daniel Ross McClure, Thomas Kayden Horstemeyer & Risley, Atlanta, GA, for Defendant.

## ORDER

HUNT, District Judge.

Plaintiffs Computer Currents Publishing Corp. and Computer Currents Licensing Corp. (collectively "Computer Currents") filed this action on January 17, 1997, asserting claims of trademark infringement, unfair competition, and dilution of trademark under the Lanham Act and Georgia law, as well as a claim for breach of a limited license agreement. Before the Court is plaintiffs' motion for a preliminary injunction [3]

## I. BACKGROUND

Plaintiffs publish a network of local computer-related news magazines entitled Computer Currents and also maintain an Internet site on the World Wide Web. The magazine was originally published in San Francisco by Stan Politi, now the president of Computer Currents Publishing Corp. Politi applied for and received federal trademark protection for the name "Computer Currents" on February 12, 1985.

Over the years, Computer Currents has expanded its operations to many cities throughout the United States, including Atlanta, by entering into licensing agreements with local publishers who publish local versions of the magazine. Under the typical licensing agreement, the local publisher is authorized to publish a news magazine following the format, practices, and standards established by plaintiffs. The local publisher is also granted authority to use the "Computer Currents" trademark in the title of the publication, provided training in the techniques used to publish the magazine, and furnished access to and allowed to purchase trade secrets and confidential information, such as a subscriber list, computer site audits, and an operations manual. In return, the licensee agrees to publish the magazine in accordance with the policies and standards set by plaintiffs and to pay a license fee, which is based in part upon a percentage of the licensee's gross receipts.

In March 1991, plaintiffs entered into a limited license agreement (the "Agreement") with defendant Jaye Communications, Inc. (known at the time as Jaye Publications, Inc.), granting defendant the authority to publish a version of Computer Currents for the Atlanta area. The parties present different versions of the events that followed.

According to plaintiffs, defendant began using the "Computer Currents" trademark on an Internet site on the World Wide Web in mid–1996, allegedly in violation of the Agreement. On July 29, 1996, plaintiffs sent defendant a letter demanding that defendant discontinue its allegedly unauthorized use of the trademark on the Web site immediately. Plaintiffs contend that defendants did not respond to this letter and launched two more Web sites using the "Computer Currents" mark.

On December 9, 1996, plaintiffs notified defendant of their intention to exercise their right to terminate the Agreement in six months and again demanded that defendant cease its use of the mark on its Web sites. Defendant again failed to respond and continued using the mark. On January 6, plaintiff notified defendant that the Agreement was terminated, effective immediately, pursuant to a provision of the Agreement granting plaintiffs the right to terminate the Agreement "for cause," which includes any action of defendant which might damage the reputation of the mark. Defendant responded that it did not believe that the immediate termination notice was justified under the Agreement and would continue to publish the Atlanta version of Computer Currents. Defendant also continued its use of the mark on the Internet.

Defendant does not dispute that it used the Computer Currents mark on the World Wide Web. However, it contends that Politi has been aware of defendant's use of the mark in an electronic medium since April 1994. At that time, Politi visited Atlanta to meet with Michael Adkinson, defendant's president. During the visit, Adkinson claims to have briefed Politi on all of defendant's marketing and sales programs, including defendants' electronic bulletin board service ("BBS"). Like the Internet, the BBS was accessible to anyone who dialed in from a remote computer. The BBS contained many references to "Atlanta Computer Currents," and included the text of several articles published in "Atlanta Computer Currents." Politi allegedly was shown the BBS at this time and raised no objection to defendant's use of the mark in this electronic medium.

Defendant further contends that Adkinson saw Politi at a trade show in May 1996 and discussed defendant's Web site with Politi, explaining that it contained may references to "Atlanta Computer Currents." Politi allegedly acknowledged that he had visited the Web site, and again raised no objection to defendant's use of the mark in this electronic medium.

Finally, defendant alleges that it has now deleted all references to "Computer Currents" from its Web site. Defendant has not responded to plaintiffs' allegation that it has launched two other Web sites including references to "Computer Currents."

## II. DISCUSSION

Plaintiffs seek a preliminary injunction on the grounds that defendant's continued use of the mark will severely damage the

value of the mark and plaintiffs' business. In order to obtain preliminary injunctive relief, plaintiffs must demonstrate: (1) a substantial likelihood of success on the merits of their claims; (2) a substantial threat that they will suffer irreparable harm if the injunction is not granted; (3) that their threatened injury outweighs the harm the injunction may cause defendant; and (4) that granting the injunction will not disserve the public interest. *Nnadi v. Richter,* 976 F.2d 682, 690 (11th Cir.1992). A preliminary injunction is an extraordinary remedy and should not be granted unless the movants clearly carry the burden of persuasion on all four elements. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983). Therefore a party's failure to satisfy one of the elements obviates the need for the Court to address the remaining elements. *See id.*

A. Likelihood of Success on the Merits

■ Plaintiffs allege that defendant's conduct constitutes trademark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a), and deceptive trade practices under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10–1–370 *et seq.* The essence of a claim under each of these provisions is that a defendant's actions have caused a "likelihood of confusion" with the plaintiff's trademark. *See, e.g., Jellibeans, Inc. v. Skating Clubs of Ga. Inc.,* 716 F.2d 833 (11th Cir.1983); *Original Appalachian Artworks. Inc. v. Topps Chewing Gum. Inc.,* 642 F.Supp. 1031 (N.D.Ga.1986); *Giant Mart Corp. v. Giant Discount Foods,* 247 Ga. 775, 279 S.E.2d 683 (1981).

■ Any unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant may constitute a trademark infringement. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir. 1983). When a terminated franchisee continues to use the former franchisor's trademarks, "[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises." *Id.* Therefore, because plaintiffs believe that the Agreement was terminated as of January 6, 1997, plaintiffs contend that defendant's continued use of the "Computer Currents" mark is in clear violation of state and federal law.

■ Defendant, however, challenges the legality of plaintiffs' attempt to terminate the Agreement immediately by their letter of January 6, 1997. Plaintiffs respond that this challenge presents no obstacle to their request for a preliminary injunction, as defendant's only avenue for raising a claim of wrongful termination is an action for damages. Unfortunately, this is a misstatement of the law.

Plaintiffs cite *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371 (3rd Cir.1992) for the proposition that "[a] terminated licensee may seek money damages for any injuries resulting from an alleged wrongful termination, [but] it may not continue to use a trademark without authority in violation of law." Plaintiffs' Brief in Support of Motion for Preliminary Injunction at 15. In *Jiffy Lube,* the franchisor terminated the franchise agreement when the franchisee ceased paying royalties to the franchisor, in violation of the agreement. In opposing the franchisor's motion for a preliminary injunction, the franchisee did not claim that it had not breached the agreement. Instead, it attempted to justify its breach by arguing that the franchisor first breached the agreement by failing to maintain the quality of its other franchises in the area. In response to this argument, the Court noted:

[A] franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the agreement are violated. Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act. Thus, Jiffy Lube will merit preliminary injunctive relief if it can adduce sufficient facts indicating that its termination of [the] franchises was proper.

*Id.* at 375. The Court then went on to find that Jiffy Lube's termination was proper under the terms of the agreement based on the franchisee's failure to pay royalties. *Id.* at 377–78. Accordingly, it ordered the district

court to grant Jiffy Lube's motion for a preliminary injunction.

In reaching this conclusion, the Court in *Jiffy Lube* simply applied basic contract principles to a trademark infringement claim that arose out of a franchise agreement. It is a fundamental principle of the law of contracts that when one party to a contract believes that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances, however, may the non-breaching party stop performance and continue to take advantage of the contract's benefits. Therefore, once the franchisee stopped making its required royalty payments, the franchisee was no longer entitled to use the franchisor's trademark.

Contrary to plaintiffs' assertion, however, *Jiffy Lube* does not stand for the proposition that a franchisor is entitled to a preliminary injunction enjoining a franchisee from using the franchisor's trademark absent a showing that the franchisor properly terminated the franchise agreement. Therefore, in order to satisfy the first prerequisite for a preliminary injunction, plaintiffs must demonstrate that, under the terms of the Agreement, they were entitled to terminate the Agreement immediately based on defendant's conduct.

■ Under the terms of the Agreement, either party has the right to terminate the Agreement, "for any reason," upon six months' prior written notice. Agreement ¶ 7. Plaintiffs notified defendant that they were exercising their right under this provision in a letter dated December 9, 1996. Defendant does not contest the validity of this termination, which becomes effective June 9, 1997; it has stipulated that it will cease use of the mark "Atlanta Computer Currents" as the title of its magazine after the publication of the June 1997 issue. However, defendant maintains that plaintiffs' subsequent notice of termination, issued on January 6, 1997 and purportedly effective immediately, was not authorized by the terms of the Agreement and therefore has no legal effect.

In the January 6, 1997 letter, plaintiffs stated that defendant had exceeded the scope of the Agreement by using the "Atlanta Computer Currents" mark on its Web site. Specifically, plaintiffs asserted that this use directly contravened the provision of the Agreement prohibiting the use of the mark "in association with any product or services, as part of any corporate or trading name or in any other manner anywhere in the world at any time." Plaintiffs' letter further alleged that this use was in violation of defendant's promise not to "advertise, promote, or otherwise deal in the Mark in any way" which could adversely affect plaintiffs' goodwill or proprietary interest in the mark.

Plaintiffs contend that they were entitled to terminate the Agreement effective immediately pursuant to paragraph eight of the Agreement, which provides that "Licensor shall have the right to terminate this Agreement for cause, which shall mean moral turpitude or any other action of Licensee which might damage the reputation of the Mark, Licensor or Licensor's other licensees." Agreement ¶ 8. Defendant argues that plaintiffs could only exercise their right to terminate for cause under paragraph eight in accordance with paragraph seven, which provides that a party must give six months' written notice of termination. However, under paragraph seven, plaintiffs were authorized to terminate the Agreement "for any reason" upon six months' written notice. If plaintiffs were required to give six months notice before they could exercise their right to terminate the Agreement "for cause," paragraph eight would be meaningless as it would confer no additional rights upon plaintiffs. Therefore, the Court agrees with plaintiffs' interpretation of this provision as granting plaintiffs a right of immediate termination.

Furthermore, the Court finds that defendant's publication of "Atlanta Computer Currents" on the World Wide Web constituted "cause" for termination under paragraph eight. By making its publication available over the Internet, which is accessible to computer-users all over the world, defendant clearly created a strong possibility of damage to plaintiffs' other licensees, who publish local versions of "Computer Currents" in cities

throughout the United States.[1] Thus, plaintiffs appear to have demonstrated a substantial likelihood of success on the merits of their claims.

However, defendant argues that plaintiffs should be estopped from claiming that defendant's use of the mark on its Web site constituted cause for termination of the Agreement because Politi was informed that defendant was using the mark in an electronic medium over two years prior to this dispute, but raised no objection at that time. Defendant's estoppel argument is based on the affidavit of Mike Adkinson, the principal owner of Jaye Communications. In his affidavit, Adkinson states that he fully described an electronic bulletin board system ("BBS"), established by defendant to promote "Atlanta Computer Currents," to Politi in April 1994. Adkinson Affidavit at ¶ 6. Like the Internet, the BBS was accessible to anyone who dialed in from a remote computer, from anywhere in the world. *Id.* at ¶ 7. The BBS contained many references to "Atlanta Computer Currents" and provided the text of several of the articles published in the magazine. *Id.*

Plaintiffs have responded to these allegations with affidavits from Politi. He states that he has no recollection of Adkinson or anyone else affiliated with defendant telling him that defendant was operating the BBS. Politi Affidavit of January 28, 1997 at ¶ 8. These conflicting statements clearly present factual issues that must be resolved at trial. However, defendant bears the burden of proof on this affirmative defense, and the Court finds that it did not carry its burden at this stage of the litigation, although it may establish this defense successfully at trial. Accordingly, the Court finds that plaintiffs have demonstrated a likelihood of success on the merits of their claims sufficient to support their request for preliminary injunctive relief.

**B. Irreparable Injury and Balance of Harms**

■ Plaintiffs contend that if defendant is not enjoined from using the "Computer Currents" trademark, the reputation of the mark and the good will associated with it will be irreparably damaged. Politi Affidavit of January 17, 1997 at ¶¶ 19–21. Because such claims have intuitive appeal but are difficult to substantiate, irreparable injury is normally presumed in trademark actions once a plaintiff establishes a substantial likelihood of success on the merits. *See, e.g., Original Appalachian Artworks, Inc. v. Topps Chewing Gum. Inc.,* 642 F.Supp. 1031, 1040 (N.D.Ga.1986). However, because a preliminary injunction is issued before a resolution of the claims on the merits, the irreparable injury to plaintiffs must be weighed against the harm a preliminary injunction will cause the defendant. Therefore, while irreparable injury is properly presumed, the Court still must attempt to quantify the harm.

■ Since the inception of this action, defendant has undertaken the removal of all references to "Atlanta Computer Currents" from its Web site and has agreed to remove any remaining references if any are identified by plaintiffs. By ceasing the use of plaintiffs' trademark on the Internet, defendant has taken affirmative steps to reduce substantially the risk of harm to plaintiffs. Furthermore, defendant intends to abide by plaintiffs' initial termination of the Agreement, which is effective June 9, 1997. Although defendant wishes to continue publishing "Atlanta Computer Currents" until that time, its use of the trademark would remain governed by the Agreement. Therefore, any harm that plaintiffs will suffer in the absence of a preliminary injunction appears slight.

In contrast, the preliminary injunction sought by plaintiffs will impose a tremendous

---

1. While the fact that defendant's magazine was available worldwide to anyone with Internet access and knowledge of the Web site location or access to a "search engine" capable of finding the site may not constitute an attempt to distribute the magazine for purposes of determining the fora in which defendant is subject to personal jurisdiction, *see Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 299 (S.D.N.Y.1996), it is clear that if a person who normally obtains a local version of "Computer Currents" in a city where defendant is not authorized to publish its magazine visits defendant's Web site, which contains the articles provided by plaintiffs to all of their licensees, there is a risk that the person will no longer have a need to obtain a copy of the local publication.

**690**

hardship on defendant. Plaintiffs seeks to enjoin defendant from using the "Computer Currents" trademark in all formats, not just on the Internet. While defendant is prepared to cease using the mark as of June 9, 1997, it intends to continue publishing a local, computer-related, news magazine under a different name. Defendant will not be able to make this transition to a new publication instantaneously, however.

Defendant has presented the affidavit of Don Caldwell, President of Jaye Communications, Inc., as evidence of the hardship that a preliminary injunction will cause defendant. Caldwell's affidavit clearly sets out of a number of tasks which defendant must complete before it will be able to launch a new publication to replace Atlanta Computer Currents. Caldwell Affidavit at ¶ 5. While plaintiffs are correct that the defendant will be forced to incur all of the expenses cited by Caldwell regardless of whether a preliminary injunction is issued, defendant's complaint is that it will not be able to release a new publication for several months. If it is enjoined from publishing "Atlanta Computer Currents" in the interim, defendant is likely to lose many of the readers and advertisers it has attracted during its eight years of publishing "Atlanta Computer Currents," as well as the good will defendant has cultivated. This obviously would be detrimental to defendant's chances of successfully launching a new publication.

Plaintiffs have demonstrated a substantial likelihood that they will be able to develop a prima facie case in support of their claims at trial. However, defendant's estoppel defense, although not fully developed at this stage of the litigation, precludes the Court from finding that plaintiffs have demonstrated an overwhelming likelihood of success on the merits of their claims. Accordingly, in order for preliminary injunctive relief to be appropriate, the irreparable injury and balance of harms factors must militate more strongly in favor of plaintiffs than if plaintiffs' victory at trial were a foregone conclusion. Because the risk of harm to plaintiff in the absence of a preliminary injunction is far outweighed by the harm a preliminary injunction is likely to cause defendant, plaintiffs' motion for a preliminary injunction [3] is DENIED.

### III. CONCLUSION

Because plaintiffs have failed to demonstrate that balance of harms in this case supports the issuance of a preliminary injunction, the Court need not address the question of whether a preliminary injunction would disserve the public interest. For the aforementioned reasons, plaintiffs' motion for a preliminary injunction [3] is DENIED.