In re TAMPA CHECKMATE FOOD
SERVICES, INC., d/b/a Tampa
Checkmate, Debtor.

CHECKERS DRIVE–IN RESTAURANTS,
Plaintiff,

v.

TAMPA CHECKMATE FOOD
SERVICES, INC.,
Defendant.

Bankruptcy No. 97–11616–8G1.
Adversary No. 97–738.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 27, 1998.

Kevin H. Graham, Tampa, FL, for Plaintiff.

James M. Landis, Tampa, FL, for Defendant.

## ORDER ON MOTION TO STRIKE AFFIRMATIVE DEFENSES OF TAMPA CHECKMATE FOOD SERVICES, INC. OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Strike Affirmative Defenses of Tampa Checkmate Food Services, Inc. or, in the Alternative, Motion for Judgment on the Pleadings filed by the Plaintiff, Checkers Drive-in Restaurants, Inc. (the Plaintiff).

The Plaintiff commenced this adversary proceeding by filing a Verified Complaint for Injunctive Relief. The Plaintiff is an owner and franchisor of fast food restaurants using the Checkers System and proprietary marks (the Checkers Marks). Generally, the Plaintiff alleges in the Complaint that the Debtor, Tampa Checkmate Food Services, Inc., and the Plaintiff had engaged in a series of transactions related to the operation by the Debtor of certain franchise restaurants. The transactions include (1) a Settlement Agreement regarding two franchise restaurants located in Jacksonville, Florida, and an option to purchase an existing restaurant in a designated geographic area; (2) a Franchise Agreement to operate a restaurant located in Tampa, Florida (the Ehrlich Road Franchise Agreement); and (3) a Promissory Note and Mortgage related to the Tampa location. The Plaintiff alleges that the Debtor defaulted under the three transactions by failing to make payments to the Plaintiff as required by the documents, and that the Plaintiff terminated the Ehrlich Road Franchise Agreement by written notice dated April 22, 1997. The Plaintiff further alleges that the Debtor has continued to use the Checkers Marks following the April 22, 1997, notice of termination.

The Complaint contains two Counts. Count I is an action for copyright and trademark infringement which "arises under the Trademark Act of 1946." (Verified Complaint, ¶ 36). In Count I, the Plaintiff seeks a preliminary and permanent injunction enjoining the Debtor from using the Checkers Marks, among other relief. Count II is an action for injunctive relief. Count II does not appear to have a specific statutory basis. Instead, Count II appears to arise "[p]ursuant to the terms of the Ehrlich Road Franchise Agreement." (Verified Complaint, ¶ 66). In Count II, the Plaintiff alleges that the Debtor's failure to perform its obligations under the Ehrlich Road Franchise Agreement will cause irreparable injury and that the Plaintiff has no adequate remedy at law, and seeks a preliminary and permanent injunction requiring the Debtor to comply with certain provisions of the Ehrlich Road Franchise Agreement, including, among other things, ceasing to use the Checkers Marks.

The Plaintiff also filed a separate Motion for Preliminary Injunction. In the motion, the Plaintiff requests the Court to enjoin the Debtor from using the Checkers Marks and from operating the restaurant as a Checkers restaurant, and to require delivery to the Plaintiff of all materials bearing the Checkers Marks.

The Debtor filed its Answer and Affirmative Defenses to Verified Complaint for Injunctive Relief. The Debtor denied the material allegations of the Complaint and asserted seven separate affirmative defenses. The affirmative defenses are: (1) the Plaintiff has failed to state a cause of action upon which relief can be granted; (2) the Plaintiff breached the Ehrlich Road Franchise Agreement; (3) the Debtor is entitled to an offset that exceeds the amount claimed by the Plaintiff; (4) the Plaintiff fraudulently induced the Debtor to enter the Franchise Agreement; (5) the Plaintiff is estopped from bringing its claim under the Franchise Agreement; (6) the Franchise Agreement was not terminated and may be assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code; and (7) the Plaintiff has waived its right to terminate the Franchise Agreement.

The Plaintiff filed this Motion to Strike Affirmative Defenses or, in the Alternative, Motion for Judgment on the Pleadings. Generally, the Plaintiff asserts that the Debtor's affirmative defenses should be stricken for three reasons.

First, the Plaintiff contends that under relevant case authority the affirmative defenses raised by the Debtor are not legally sufficient defenses to the Plaintiff's claims. According to the Plaintiff, this case authority establishes the rule that a franchisee may only assert a claim against a franchisor for monetary damages in those circumstances where a franchise agreement grants the franchisor a right to terminate the agreement upon the occurrence of specified defaults, and the franchisor determines that a designated default has in fact occurred. In those circumstances, if the franchisee continues to use the franchisor's marks following termination, any pre-termination breach by the franchisor is not relevant to a subsequent infringement action by the franchisor, and the franchisee therefore may not assert the franchisor's wrongful termination as a defense to the infringement action. In support of this position, the Plaintiff cites *S & R Corporation v. Jiffy Lube*, 968 F.2d 371 (3rd Cir.1992); *Burger King Corp. v. Majeed*, 805 F.Supp. 994 (S.D.Fla.1992); and *Burger King Corp. v. Hall*, 770 F.Supp. 633 (S.D.Fla.1991), among other cases.

Second, the Plaintiff contends that it seeks relief pursuant to the Lanham Act, and that the statute contains an exclusive list of only eight defenses that may be raised to an infringement action under the Act. According to the Plaintiff, the defenses raised by the Debtor are not included in the exclusive list, and therefore are not permitted defenses under 15 U.S.C. § 1115(b). Title 15 of the United States Code is entitled "Commerce and Trade," Chapter 22 of Title 15 is entitled "Trademarks," and Section 1115 of Chapter 22 is entitled "Registration on principal register as evidence of exclusive right to use mark; defenses." Subsection (b) of Section 1115 relates to the "incontestability" of marks, and provides that conclusive evidence of the right to use a registered mark, as such evidence is described in the section, "shall be subject to the following defenses or defects." The first seven defenses listed in the section were not raised by the Debtor in this case. The eighth "defense" states "[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." At the hearing on its Motion to Strike, the Plaintiff acknowl-edged that the Debtor may be entitled to raise the defenses of waiver and estoppel under this subsection of the statute, but asserted that such defenses should be limited in scope to whether the Plaintiff had waived its right to receive royalties and other payments under the Franchise Agreement, and whether it is estopped from claiming that it was entitled to receive those payments.

Finally, the Plaintiff asserts that the Debtor's pending bankruptcy case does not affect the conclusion that a franchisor's allegedly wrongful termination of a franchise agreement is not a defense to an action for trademark infringement. The Plaintiff contends that it had a unilateral right to terminate the Franchise Agreement under the contract, that it terminated the Agreement prior to the filing of the bankruptcy petition based on the Debtor's default in payment, and that the contract therefore is not property of the chapter 11 estate and is not assumable by the Debtor.

The Debtor filed a written Response and Objection to the Motion to Strike Affirmative Defenses. According to the Debtor, the motion should be denied because disputed issues of law are present in this case, and courts should not determine such disputes on a motion to strike, but should instead favor a determination on the merits. The Debtor contends that the Plaintiff did not have the right to terminate the Franchise Agreement as a matter of contract law, because the Plaintiff had substantially breached the Agreement prior to any breach by the Debtor. The Debtor further claims that the Plaintiff's prior breach and fraudulent conduct creates an estoppel that precluded the Plaintiff from effectively terminating the Agreement. Since the Agreement was not effectively terminated, the Debtor contends that the contract is property of the bankruptcy estate and may be assumed by the Debtor in its chapter 11 case. Finally, the Debtor claims that at least two of its defenses (waiver and estoppel) are equitable defenses that are specifically listed in Section 1115(b) of Title 15 as available defenses in an infringement action.

## Discussion

 Rule 12(f) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, provides that upon a party's motion, "the court may order stricken from any pleading any insufficient defense...." Motions to strike under Rule 12(f) are generally disfavored and should be denied unless it is clear that the defenses could not succeed under any circumstances. A motion to strike should only be granted if three requirements are satisfied: (1) it must appear to a certainty that the plaintiff would succeed despite any set of facts which could be proven to support the defense; (2) the defense must not present disputed and substantial questions of law which, if resolved, could support the defendant's claim; and (3) the plaintiff must show that it would be prejudiced if the defense is included. Generally, the pleadings should be construed liberally to give the defendant a full opportunity to support its claims at trial. *State of New York v. Almy Brothers, Inc.*, 971 F.Supp. 69, 72 (N.D.N.Y.1997); *FDIC v. Pelletreau & Pelletreau*, 965 F.Supp. 381, 389 (E.D.N.Y.1997).

The standard by which the Court reviews the Plaintiff's Motion to Strike is particularly important in this case, because the cases cited by the Plaintiff to support its fundamental proposition were all considered in a significantly different procedural context. None of the cases were decided as a threshold matter based only on the pleadings filed in the case. Instead, the cases were decided on the merits of a request for injunctive relief, after each party had been provided an opportunity to fully present its position. In fact, the Plaintiff acknowledges in its Memorandum in Support of the Motion to Strike that "[t]he Court of Appeals [in *Jiffy Lube* ] described the legal issue involved in the case as being whether the franchisor could satisfy the 'likelihood of success on the merits' threshold requirement for preliminary injunctive relief." (Memorandum, p. 6).

The standard for determining the entitlement to preliminary injunctive relief (establishing the substantial likelihood of success on the merits) is different from the standard for determining whether to grant a motion to strike a defense (establishing "to a *certainty* that plaintiffs *would* succeed despite *any* state of the facts which could be proved in support of the defense") *Almy Brothers,* 971 F.Supp. at 72. (Emphasis supplied).

### A. Case authority regarding wrongful termination as a defense

 Applying the appropriate standard to test the motion, the Court cannot conclude that a franchisor's wrongful termination of a franchise agreement could never form a valid defense to an infringement claim. There is at least a disputed and substantial question of law on this issue, as shown by the recent District Court decision in *Computer Currents Publishing Corp. v. Jaye Communications, Inc.*, 968 F.Supp. 684 (N.D.Ga.1997). In *Computer Currents,* the plaintiff had filed an action for trademark infringement under the Lanham Act and requested a preliminary injunction. In response, the defendant asserted that it did not believe that the plaintiff's termination of their agreement was justified, and had continued to use the plaintiff's mark. The plaintiff took the position that a challenge to the legality of the termination presented no impediment to the entry of a preliminary injunction because the defendant's only remedy for such a wrongful termination was an action for damages. The District Court expressly characterized the plaintiff's position as "a misstatement of the law." *Computer Currents,* 968 F.Supp. at 687. The District Court then discussed *Jiffy Lube,* and recognized that the Third Circuit Court of Appeals in that case had made a specific finding that the franchisor's termination had been proper under the parties' contract, before determining the plaintiff's right to a preliminary injunction. The District Court in *Computer Currents* then stated:

Contrary to plaintiff's assertion, however, Jiffy Lube does not stand for the proposition that a franchisor is entitled to a preliminary injunction enjoining a franchisee from using the franchisor's trademark absent a showing that the franchisor properly terminated the franchise agreement. Therefore, in order to satisfy the first pre-

requisite for a preliminary injunction, plaintiffs must demonstrate that, under the terms of the Agreement, they were entitled to terminate the Agreement immediately based on the defendant's conduct. *Id.* at 688. The court found that the agreement at issue in *Computer Currents* provided for an immediate right of termination in favor of the plaintiffs. The Court also found, however, that the defendant's estoppel defense prevented the plaintiff from establishing its "likelihood of success on the merits," and denied the plaintiff's motion for a preliminary injunction. *Id.* at 690.

The District Court in Illinois announced the same rule in another recent decision on cross-motions for summary judgment. *Servpro Industries, Inc. v. Schmidt,* 1997 WL 158316 (N.D.Ill.) In *Servpro,* the defendant had not made certain payments called for under a franchise agreement, Servpro had terminated the agreement, and the defendant had continued to use Servpro's marks. Servpro filed an action under the Lanham Act, among other claims, and the District Court stated:

> [I]n order to prevail on a trademark infringement claim against a former franchisee for post-termination use of the marks, Plaintiff must first establish that the franchise agreements were legally terminated, thereby proving that the Defendant used the plaintiff's marks without consent and that it was this unauthorized use that created the likelihood of consumer confusion.

*Servpro,* 1997 WL 158316, at 11. (Citations omitted). The District Court also made a similar finding with respect to Servpro's claim for breach of contract:

> The Defendant's continued use of the Servpro trademark and trade indicia in connection with the Arlington agreement would not constitute a breach of that contract if it was unlawfully terminated.

*Id.* at 10. The Court found that genuine issues of fact existed as to whether the defendant's post-termination use of the marks constituted a breach of the contract. *Id.*

The decisions in *Computer Currents* and *Servpro* are not inconsistent with the decisions cited by the Plaintiff to support its claim in this case.

1. *S & R Corporation v. Jiffy Lube International, Inc.,* 968 F.2d 371 (3rd Cir.1992). "Jiffy Lube will merit preliminary injunctive relief *if* it can adduce sufficient facts indicating that its termination of Durst's franchises was proper." *Jiffy Lube,* 968 F.2d at 375. (Emphasis supplied). The Third Circuit concludes that the District Court had "refused, *mistakenly,* to address the propriety of Jiffy Lube's termination of the franchise agreements." *Id.* at 379 (Emphasis supplied). The Third Circuit then corrects the "mistake" by specifically finding that the franchisee's failure to pay royalties was a violation under the franchise which justified termination. Only after the Third Circuit found that the termination was justified did it agree to grant Jiffy Lube's request for preliminary injunction. *Id.*

2. *Burger King Corporation v. Agad,* 911 F.Supp. 1499 (S.D.Fla.1995). The franchise agreement had expired by its own terms, and the franchisee contended only that the franchisor had wrongfully refused to enter into a new agreement. "[T]his action does not involve the termination of a franchise. Rather, this is an expiration case." *Agad,* 911 F.Supp. at 1508. Under this legally distinguishable factual situation, the Court declined to force the parties to involuntarily enter into a new contract with each other.

3. *Burger King Corporation v. Majeed,* 805 F.Supp. 994 (S.D.Fla.1992) After the franchisor had declared an initial default, the parties entered into a settlement stipulation whereby the franchisor agreed not to pursue its default remedies, conditioned on the franchisee's payment of its monetary obligations after the date of the settlement. The franchisee then defaulted under the stipulation, and the District Court found that the franchisee had specifically agreed to be evicted from the restaurant upon such a default. *Majeed,* 805 F.Supp. at 1002. The District Court also found that there was no evidence presented to support any allegation of wrongdoing on the part of the franchisor. *Id.* at 1004.

4. *Burger King Corporation v. Hall,* 770 F.Supp. 633 (S.D.Fla.1991). On the basis

of evidence submitted over a period of two days, the Court concluded that the franchise agreement had been effectively terminated pursuant to the franchisee's nonpayment of royalties and other contributions.

In each of these cases, therefore, the court reviewed the terms of the agreement between the franchisee and the franchisor as an evidentiary matter. In each case in which a preliminary injunction was granted, the Court then made a specific determination prior to issuing the injunction that an event had occurred under the parties' agreement that entitled the franchisor to terminate the contract. As the District Court stated in *Computer Currents,* the cases do "not stand for the proposition that a franchisor is entitled to a preliminary injunction enjoining a franchisee from using the franchisor's trademark absent a showing that the franchisor properly terminated the franchise agreement." *Computer Currents,* 968 F.Supp. at 688.

The Debtor's affirmative defenses in this case focus on the Debtor's claim that the Plaintiff wrongfully terminated the Ehrlich Road Franchise Agreement, and that the termination was improper because of certain conduct of the Plaintiff prior to the termination. The Plaintiff contends that the parties' contract granted it an absolute right to terminate upon the Debtor's failure to pay its monetary obligations, without regard to any other considerations. The Court has not received evidence regarding the specific terms of the Franchise Agreement or the conditions set forth in the contract which must be satisfied before the Plaintiff may invoke its right to terminate. Consequently, the Court cannot determine at this point in the case whether the Plaintiff's contractual right to terminate was absolute, as contended by the Plaintiff, or whether the Plaintiff's right to terminate was subject to equitable or other considerations, as contended by the Debtor. Since the Plaintiff may be required to show that the termination was proper, and since at this point the Court is unable to make the initial determination that the Plaintiff's right to terminate was absolute, the Court cannot determine whether the affirma-

tive defenses pled by the Debtor are "insufficient" defenses to the action within the meaning of Rule 12(f) of the Federal Rules of Civil Procedure. Accordingly, the defenses should not be stricken.

## B. Statutory defenses

The Plaintiff also contends that the Debtor's affirmative defenses should be stricken because they do not fall within the list of defenses enumerated in 15 U.S.C. § 1115(b) As set forth above, that section provides that conclusive evidence of the right to use a registered mark "shall be subject to the following defenses or defects." A list of eight statutory defenses follows. The eighth defense states that "equitable principles, including laches, estoppel, and acquiescence, are applicable."

First, it should be noted that the Complaint which commenced this proceeding contains two counts. The first count is brought "under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.,* and particularly 15 U.S.C. §§ 1114, 1116, 1117, and 1125." The statement of defenses provided in 15 U.S.C. § 1115(b), therefore, may apply to this count. The second count, however, does not appear to have any statutory basis. Instead, Count II alleges only that it is "an action for permanent injunctive relief," that the Debtor has failed to perform certain obligations under the Ehrlich Road Franchise Agreement, that the Plaintiff will be irreparably injured unless the Debtor complies with its obligations under the Agreement, and that the Plaintiff has no adequate remedy at law. Consequently, Count II appears to seek common law injunctive relief based solely on the parties' contract. Allowable defenses to such common law equitable relief, of course, should not be limited to the defenses that are statutorily permitted to a specific cause of action created by that statute. The Debtor's affirmative defenses are directed to the entire Complaint, and not only to Count I. Accordingly, at a minimum, the Debtor should not be precluded from pursuing its defenses as to the claim for an equitable injunction asserted in Count II.

Additionally, it is not clear that the list of enumerated defenses set forth in 15 U.S.C.

§ 1115(b) is intended to constitute an exclusive list of permitted defenses in trademark infringement cases. To support its claim that the list is exclusive, the Plaintiff relies in part on the United States Supreme Court's decision in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) At the time that *Park 'N Fly* was decided, the prefatory language to the list of defenses contained in Section 1115(b) stated:

> If the right to use the registered mark has become incontestable ..., the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark ... *except when one of the following defenses or defects is established.*

15 U.S.C. § 1115(b). (Emphasis supplied). The statute was amended in 1988, however, after the Supreme Court decided *Park 'N Fly*, and the prefatory language now states:

> Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title, *and shall be subject to the following defenses or defects.*

15 U.S.C. § 1115(b) (Trademark Law Revision Act of 1988) (Emphasis supplied) The former statute deems the registration conclusive evidence "except" when "one" of the defenses applies. The revision provides that the conclusive is "subject to" the listed defenses. Although legislative intent is not clearly reflected, the revision may be less restrictive than the former version of the statute. Alternatively, since equitable defenses were added to the listing of defenses, the revision may indicate Congressional intent to enumerate the complete list of defenses and eliminate any other exceptions. The revised statute does not state whether the list is inclusive or exclusive.

As indication that the list may not be exclusive, several decisions entered after the effective date of the revision have reached conclusions based on defenses not set forth in the statute. In *Northwestern Corporation v. Gabriel Manufacturing Co., Inc.*, 1996 WL 732519 (N.D.Ill.), for example, the District Court denied a plaintiff's motion to strike the defendant's affirmative defense of "functionality," even though it is not an enumerated

defense. The Court allowed the defense on the basis that it stems from a public policy created by the judiciary, and therefore is a "public policy defense." In *Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F.Supp. 1339, 1352 (E.D.N.Y.1994), the District Court stated that "[i]n addition to these enumerated defenses to the mark's contestability and registrability, an alleged infringer may successfully defend an infringement claim by demonstrating accrued common law rights in the mark prior to the date of registration that are superior to the registrant's rights." Finally, in *Majorica, S .A. v. Majorca International, Ltd.*, 687 F.Supp. 92, 98–99 (S.D.N.Y.1988), which may actually have been entered before the effective date of the revised statute, the District Court denied a motion to strike a defendant's affirmative defenses, including equitable defenses, on the basis that they "fairly present questions of law or fact that the defendants should not be precluded from raising at this stage of the litigation."

These cases rely on exceptions to the exclusivity of the listed defenses which were established prior to the revision of the statute, rather than the principle that the statutory revision provided an inclusive rather than an exclusive list of defenses. However, the cases nevertheless indicate that defenses other than those listed in the Lanham act have been allowed since the revision of the statute.

Accordingly, the Debtor's defenses should not be stricken on the ground that they do not fall within the defenses listed in 15 U.S.C. § 1115(b).

**C. Effect of bankruptcy**

■ The Plaintiff contends that the agreement in this case was terminated prior to the filing of the chapter 11 petition, and that it therefore is not property of the bankruptcy estate and not assumable by the Debtor. The Plaintiff further contends that the Debtor may not assert that the Agreement was wrongfully terminated as a defense to its trademark infringement action, that the termination was therefore valid and effective, and that the pendency of the Debtor's bank-

**548**

ruptcy case should have no effect on this conclusion.

The Bankruptcy Court addressed the assumability of a franchise agreement that had been terminated prepetition in *In re Comp III, Inc.*, 136 B.R. 636 (Bankr.S.D.N.Y.1992). In that case, the debtor filed an action against the franchisor and alleged that the agreement had been wrongfully terminated. The Bankruptcy Court viewed the issue as whether the franchisor was justified in terminating the agreement. The Court concluded that it may be empowered to reinstate a franchise agreement that was wrongfully terminated, and stated:

> If the injury amounts essentially to a loss of sales and not to intrinsic damage to the business, an injunction to reinstate the unlawfully terminated franchise is not appropriate.... However, where the complained-of action results not only in a contemporaneous loss of profits but in a loss of goodwill or the ability to compete as effectively in the marketplace, the relief should be granted.

*Comp III*, 136 B.R. at 639–40. According to the Court, an order reinstating the franchise agreement *and* awarding damages may be appropriate under certain circumstances. *Id.* at 639.

Although the circumstances in the *Comp III* case differ from the circumstances alleged in this case, on the basis of the pleadings only the Court cannot determine to a certainty that the Ehrlich Road Franchise Agreement could never be reinstated. If the Debtor establishes that the Franchise Agreement was wrongfully terminated, the contract may be property of the bankruptcy estate that the Debtor may be entitled to assume under Section 365 of the Bankruptcy Code. The Motion to Strike Affirmative Defenses should be denied.

### Conclusion

This matter is before the Court on a Motion to Strike Affirmative Defenses under Rule 12(f) of the Federal Rules of Civil Procedure. The Plaintiff contends that the Debtor's affirmative defenses are "insufficient" within the meaning of the Rule. To be insufficient within the meaning of the Rule, (1) it must appear to a certainty that the plaintiff would succeed despite any set of facts which could be proven to support the defense, (2) the defense must not present disputed and substantial questions of law which, if resolved, could support the defendant's claim, and (3) the plaintiff must show that it would be prejudiced if the defense is included. On the basis of the pleadings, however, and for the reasons set forth in this Order, the Court cannot conclude that the Plaintiff would prevail in this proceeding despite any set of facts which could be proven to support the Debtor's defenses. Further, the Court finds that the defenses present disputed and substantial questions of law which, if resolved, could support the Debtor's claims. Accordingly, the Motion to Strike Affirmative Defenses should be denied. Further, since the Debtor's affirmative defenses remain in the case as pending allegations, it is inappropriate to grant the Plaintiff's alternative motion for judgment on the pleadings.

Accordingly:

**IT IS ORDERED** that the Motion to Strike Affirmative Defenses of Tampa Checkmate Food Services, Inc. or, in the Alternative, Motion for Judgment on the Pleadings filed by Checkers Drive-in Restaurants, Inc. is denied.